## ALLEN *against* ADAMS and another.

17 67
73 414

*A*, being appointed sheriff, gave bond, with sureties, for the faithful discharge of his official duties; and *B* executed a bond to the sureties to indemnify them. *A* afterwards brought an action against *C* on a receipt given by him for property attached by *A*, as sheriff, in a suit between *D* and *E*. On the trial of such action, *A* offered *B*, as a witness, to prove a demand of the property. The bond given by *B* was then outstanding; but it did not appear, that any suit had ever been brought against *A* for any default in his office. Held, that *B* was a competent witness.

*A*, having, as sheriff, attached personal property, in a suit brought by *D* against *E*, judgment was rendered in such suit in favour of *D*, by the superior court; after which *A* demanded of *C*, the receipter, the property attached, to be applied on the execution, and *C* failed to deliver it. *E* then brought a writ of error on such judgment, which was reversed, by the supreme court of errors, on a ground not inconsistent with an ultimate recovery by *D*. At the next succeeding term of the superior court, the cause, at the instance of *D*, was entered in the docket of that court, where it remained open and undisposed of; when *A* brought his action against *C* on the receipt. Held, 1. that after the reversal of said judgment, the cause was properly entered in the superior court for trial; 2. that for this purpose, no order of the supreme court of errors, remanding the cause, was necessary; 3. that in this suit, it was not necessary to show any action of the superior court directing or sanctioning the entry, as it would here be deemed to have been properly and regularly made; 4. that said judgment was not a " final judgment," within the meaning of that expression in the statute relative to the attachment of personal property; (*tit.* 2. *s.* 7.) 5. that consequently, the lien created by the attachment, was not discharged, by the lapse of sixty days after such judgment, without any levy of execution on the property.

THIS was an action of *assumpsit*. The declaration alleged, that on the 1st of *July*, 1839, the plaintiff was, and still is,

*Hartford,*
*June, 1845.*

Allen
*v.*
Adams.

sheriff of the county of *Hartford;* that on that day, *Thomas H. Marshall* sued out a writ of attachment, directed to said sheriff, commanding him to attach the goods or estate of *Ansel Humphrey,* to the value of 300 dollars, and to summon him to appear before the county court of the county of *Hartford,* to be holden on the second *Tuedsay* of *August,* 1839, to answer to said *Marshall,* in a plea of the case, demanding 300 dollars and costs of suit; that upon said writ of attachment, bond for prosecution was duly given, and that it was in all respects according to law; that said writ being delivered to the plaintiff, as sheriff, to be served and returned according to the exigency thereof, he, on said 1st day of *July,* attached certain goods, *viz.,* one chaise, &c., of the value of 300 dollars; that having so attached said goods, he took them into his custody and possession, and thereupon the defendants, in consideration that the plaintiff, as such sheriff, would, at their special instance and request, deliver said goods to them, undertook and faithfully promised the plaintiff to deliver said goods to him, when demanded; that the plaintiff, confiding in the defendants' said promise and undertaking, then and there delivered said goods to them; and they, in consideration thereof, on the same day, executed and delivered to the plaintiff, as such sheriff, a certain writing or receipt, wherein they acknowledged the receipt of said goods, that the same were the property of said *Humphrey,* and jointly and severally promised to safely keep the same, and deliver them to the plaintiff, when demanded; that the plaintiff duly returned said writ, with his proper endorsement of the attachment of said goods thereon, which was entered in the docket of said court to which it was made returnable; that the action, by legal continuances and removes, came to the term of the superior court holden on the fourth *Tuesday* of *September,* 1841, when said *Marshall* recovered judgment against said *Humphrey,* for the sum of 97 dollars, 30 cents, damages, and 64 dollars, 48 cents, costs of suit; that upon this judgment an execution issued, dated the 29th of *October,* 1841, which was put into the plaintiff's hands, as sheriff, to be executed; that the plaintiff, as such sheriff, on the 30th of *October,* 1841, made demand for said goods of the defendants, to satisfy said execution; but the defendants, or either of them, their said promise and undertaking not regarding, did not deliver said

goods to the plaintiff, though he was ready to receive the same ; nor have they, or either of them, since delivered the same to the plaintiff, though often thereunto requested ; *ad damnum,* &c.

The cause was tried, on the general issue closed to the court, at *Hartford, September* term, 1844, before *Storrs,* J.

The court found, that all the allegations of the declaration were true, except those relating to the demand of the goods, and the neglect of the defendants to deliver them ; and as to such excepted allegations, the court found, that these also were true, if *Walter Harris* was a competent witness to prove them, otherwise, they were not true. It appeared, that the plaintiff, upon his being appointed sheriff of *Hartford* county, gave bond, with sureties, according to law, for the faithful discharge of the duties of his office ; and that *Harris* executed a bond to those sureties, binding himself to indemnify them against any loss or damage which they might sustain, by reason of their bond ; which bond, so given by *Harris,* is now outstanding. It did not appear, however, that any suit had ever been brought against the plaintiff, for any neglect or default in his office.

The court also found, that after the recovery of the judgment mentioned in the declaration, and after the demand by the plaintiff, the neglect of the defendants and the return of the execution, *Humphrey* brought a writ of error on that judgment, in the supreme court of errors in *Hartford* county, holden in *June,* 1843, when said judgment was reversed. (*a*)

At the next term of the superior court in *Hartford* county, after such reversal, the plaintiff in the action entered it in the docket of that court ; and it has since been continued from term to term to the present time, and now remains on the docket, open and undisposed of.

The case was reserved for the consideration and advice of this court, as to the competency of *Harris* as a witness, and as to what judgment ought to be rendered in the cause.

*T. C. Perkins,* for the plaintiff, contended, 1. That *Harris* was a competent witness to prove a demand on the execution. In order to disqualify a person, there must be a legal, certain, fixed interest ; not a remote, contingent interest.    2 *Phill.*

(*a*) See the case of *Humphrey* v. *Marshall,* in err. 15 *Conn. R.* 341-347.

*Ev.* 92. (*Cow.* ed.)    2 *Stark. Ev.* 744, 5.    If he does not gain or lose, by the event of the suit, or if the verdict cannot be given in evidence for or against him, in another suit, he is competent.    *Van Nuys* v. *Terhune, 3 Johns. Ca.* 82.    *Clark* v. *Lucas,* 1 *Car. & Pa.* 156. (11 *E. C. L.* 353.)    The bare possibility that an action may be brought against a witness, is no objection to his competency.    *Carter* v. *Pearce,* 1 *Term R.* 163.    In this case, a verdict against the plaintiff would not be evidence in an action on the bond for a breach of official duty ; much less would it be evidence in an action on the bond executed by the witness.

2. That the plaintiff, after the reversal of the judgment, was entitled to enter his action anew in the superior court. The statute of 1830 expressly gives this right.    *Stat.* 70, 1. (ed. 1838.)

3. That the lien by attachment had not been dissolved. It is claimed, that the bond on the writ of error was substituted in its place.    What ground is there for this claim? The bond does not purport, either in its terms or by any possible inference, to be security for any final judgment : it is simply to secure the costs of the writ of error.    If such a bond was sued, it would be a perfect defence, to say, that the condition of it was fulfilled, by prosecuting the writ of error to effect.

4. That the original action of *Marshall* v. *Humphrey,* stands now precisely as it did before the trial in the superior court.    The error has been expunged, and every thing else is *in statu quo.    Lockwood* v. *Jones,* 7 *Conn. R.* 431. 436. It is the same action : there has been no new writ, declaration or service.

5. That the plaintiff's right of action against the receipters, is not dependent on the judgment in the original action. The plaintiff is entitled to the return of the property, upon demand, whichever way that judgment may be, and even before any judgment is rendered.    *Jones* v. *Gilbert,* 13 *Conn. R.* 507.    *Phelps* v. *Landon,* 2 *Day* 370.

*Hungerford* and *Toucey,* for the defendants, contended, 1. That *Harris* was an incompetent witness.    [Not pressed.]

2. That the property attached, being personal estate, could be holden only sixty days after final judgment, by virtue of the attachment.    *Stat.* 44. *tit.* 2. *s.* 7. (ed. 1838.)

3. That the final judgment contemplated by the statute, was, in this case, the final judgment of the superior court, which was reversed by the supreme court of errors. *Butler* v. *Bissell*, 1 *Root*, 102. *Fleming*, exr. of *McDonald*, v. *Lord*, *Id.* 214. 1 *Sw. Syst.* 175, 6. *Lockwood* v. *Jones*, 7 *Conn. R.* 431. *Clap* v. *Bell*, 4 *Mass. R.* 99. *Swett* v. *Sullivan*, 7 *Mass. R.* 342. *Bingham* v. *Pepoon*, 9 *Mass. R.* 339. *Taylor* v. *Boyd*, 3 *Ohio R.* 337.

4. That the final judgment of the superior court having been reversed, and the property attached discharged of the lien, the entry of the cause anew in the superior court, did not revive the lien. *The Union Manufacturing Company* v. *Pitkin*, 14 *Conn. R.* 182.

5. That the right of entering the cause anew, in case of reversal, exists only when it is given by statute; and it is given by statute only in case of reversal by the superior court, and not by the supreme court of errors. *Stat.* 61. *tit.* 2. *s.* 70.—*p.* 117. *tit.* 19. *s.* 3. (ed. 1838.)

6. That if the legislature had authorized the supreme court of errors to remand the cause, after reversal, and the superior court to permit the entry thereof in its docket, some appropriate action of each court, directing or sanctioning the proceeding, ought to be shown. Here, nothing of that nature appears.

STORRS, J. Of the competency of *Harris,* as a witness in this case, there is no doubt; and indeed no question has been made before us on this point. If he has any interest whatever in the suit, it is not of that certain or direct character which disqualifies him as a witness. 2 *Stark. Ev.* 744. 2 *Phill. Ev.* (by *Cowen*) 92.

The refusal by the defendants, to deliver to the plaintiff the property mentioned in the contract declared on, when demanded, was clearly a breach of that contract, and entitles the plaintiff to recover, unless the proceedings on the writ of error brought on the judgment, rendered in the action on which the property was attached, constitute an objection to such recovery.

It appears, that, after that demand and refusal, a writ of error was brought to the supreme court of errors on that

*Hartford,*
*June, 1845.*

Allen
*v.*
Adams.

judgment ; that the judgment was reversed ; and that the action was thereupon re-entered, at the instance of the plaintiff therein, in the docket of the superior court, where it now remains open and undisposed of.

The defendants claim, that the effect of that reversal was to discharge the lien upon the property created by the attachment of it in that action ; and that, as the plaintiff, who was the attaching officer, is thereby exonerated from any obligation to have the property forth-coming, for the benefit of the creditor on whose behalf it was attached, the property is restored to the possession of the defendant in that action, the plaintiff cannot be rendered liable to either of them on account of it, and therefore, is not entitled to recover in the present suit ; since his right of recovery depends on his eventual liability to the parties in the suit in which the property was attached. They rely on the statute, which provides, that no personal estate attached shall be held to respond the judgment obtained by the plaintiff at whose suit the same is attached, either against the debtor or any other creditor, unless such judgment creditor take out execution on such judgment, and have the same levied thereon, within sixty days after final judgment, or the removal of any prior incumbrance by attachment ; (*Stat. tit. Actions Civil. sect.* 7. *p.* 44.) and they insist, that the judgment rendered in that action was the final judgment contemplated by that statute, and that therefore, the property attached could be holden only to respond that particular judgment ; and that, as that judgment was reversed, and thus rendered incapable of being enforced, the property became exonerated from the attachment in that suit. Hence, it will be perceived, that the defendants' claim rests upon the effect that is to be given to the judgment of reversal rendered by the supreme court of errors.

The judgment which was reversed, while it remained un-reversed, was, undoubtedly, what is technically termed a final judgment in the suit in which it was rendered, as contradistinguished from what is called an interlocutory judgment ; (3 *Blk. Com.* 398.) and if it had not been reversed, it would have continued to be a final judgment, because, in the words of *Blackstone's* definition of a final judgment, it would have " put an end to the action ;" and would, therefore, have been the final judgment contemplated by the statute which has

been mentioned.    The action in which it was rendered, would have been completely and absolutely terminated thereby.    If, however, in consequence of its being reversed, it did not put an end to the action, it was not, by the very terms of the definition, a final judgment.    Now, it is very clear, that, when that judgment was reversed, it ceased to be a judgment of any description, because the effect of such reversal was wholly to vacate and annul it.    This is plain from the nature of the proceeding and the form of the entry of a judgment of reversal.    Legally speaking, therefore, the judgment so reversed has now no existence.    In legal contemplation, it is annihilated, and it is as if it had never been rendered.    It is now, therefore, not only not technically a final judgment, but, it is no judgment at all.    If an action should be brought upon it, *nul tiel record* could be successfully pleaded.    It is no bar to a suit brought for the same cause of action.    The record is supposed to be obliterated and destroyed.    That judgment being annulled, it did not, as such, nor in the sense in which a judgment is properly or usually said to have that effect, put an end to the action in which it was rendered ; and it, therefore, cannot be called a final judgment, unless the consequence of the reversal of it was, that no further proceedings could subsequently be had in that action ; and then only in a very loose sense.    The defendants claim, that such was its effect. The question then arises, whether the judgment of reversal put an end to the proceedings in that action, so that no further steps could legally be taken in it ; or whether it might not afterwards be entered again in the superior court, and there proceeded with, in the same manner as in cases of judgments reversed on writ of error by that court ; for it is not claimed, that there could have been any thing further done in the action in the supreme court of errors, after such reversal.

Before the recent statutes were passed, providing for the entering of actions, in certain cases, for further proceedings, in the superior court, on a reversal, by that court, of judgments on writ of error, it was, and had been, from the earliest period of which we have any information on the subject, the invariable practice, on the reversal of a judgment of the superior court, to enter the cause again in that court for a re-trial, unless it was reversed on a principle which showed that the

*Hartford,*
June, 1845.

Allen
*v.*
Adams.

action could not be sustained. In the first volume of *Root's* Reports, (*pp.* 574, 575.) it is stated, as a point of practice which had been adjudged, that when there is a reversal of a judgment by the superior court, " the plaintiff in the original action might enter and try his cause in that court, as though it came up by appeal ; and that the supreme court of errors, upon a reversal of a judgment of the superior court, do not proceed to try or render any judgment in the original cause ; but, whenever it is proper and necessary, remand the cause to the superior court, for them to render the proper judgment ; and that in such cases, the parties are allowed to plead anew." This was the course taken in *Davenport* v. *Bradley*, 4 *Conn. R.* 308. and was there said, by *Hosmer*, Ch. J. to be " according to the established practice of this court." The same practice had been recognized, by this court, in *Gleason* v. *Chester*, 1 *Day's R.* 27. 152. This practice was undoubtedly established for the reason that this court is not a tribunal for the trial of questions of fact ; and that, therefore, justice required that the cause should, whenever it was necessary, in order that the rights of the parties might be fully tried and determined, be remitted to the superior court, whose province it is to try such questions. We deem it to be our duty to adhere to a practice thus long since expressly settled by this court, which has since uniformly prevailed and been recognized, and which is moreover so conducive to the purposes of justice.

It appears, by the finding in this case, that the judgment of the superior court, which we are now considering, was not reversed on a principle which showed that the action in which it was rendered could not be sustained. It was, therefore, under the practice which has been mentioned, clearly a case where it was proper that the action should be re-entered in the superior court for trial.

The defendants, however, further claim, that, if it was competent for the plaintiff to enter it there, the entry of it, in this instance, is to be deemed irregular, because it does not appear to have been made, by the direction, or with the sanction or approval, of that court.

The finding is, that the action was, at the next term of the superior court after the reversal of the judgment, entered, at the instance of the plaintiff in said action, in the docket of

*Hartford,*
June 1845.
———
Allen
*v.*
Adams.

that court, and has ever since remained entered in said docket, and has been continued from term to term to the present time, and now remains thereon open and undisposed of by that court. Nothing appears as to the particular manner in which such re-entry was procured or made; nor whether the attention of that court has ever been directly called to the subject, by either of the parties to the action, by motion or otherwise. Under these circumstances, we think, that for the purposes of the trial of this cause, such entry should be deemed to have been properly and regularly made, and the action legally before that court. It ought to be considered as having been entered by its permission and authority. It would be not only novel, but irregular, for that court to interfere collaterally, on the trial of the present suit, with that entry, which, it will be observed, is of another and distinct action. That entry, if wrongly made, should be vacated, and thus its effect avoided, by some direct and appropriate proceeding. Clearly this court, called on, as it is at present, merely to advise the superior court, in the cause now on trial, cannot, properly, in this collateral and indirect mode, review the correctness of the doings of that court in relation to the entry of that action. Its proceedings, in this particular, must be presumed by us to be regular, since we are not now sitting to revise any alleged errors of that tribunal.

It is further claimed, by the defendants, that the superior court had no authority to take jurisdiction of that action, after the judgment therein was reversed, because it does not appear, that there was any order of the supreme court of errors directing it to be entered in the former court. If such an order were necessary, we think, that, inasmuch as it appears, that the entry of it was allowed to be, and it was in fact, made, it is to be presumed, that it was done rightfully and in pursuance of the requisite order, at least, in the absence of any evidence to the contrary. But in our opinion, no special motion of the party, nor order of the supreme court of errors, is necessary to justify the plaintiff in entering the action in the superior court, or to warrant that court to permit such an entry, in a case where it is proper, as it was in the instance before us, that further proceedings should be there had. And it has not been the practice, in such cases, to move for, or obtain, any special order directing a

*Hartford,*
Jun^e, 1845.

Allen
*v.*
Adams.

re-entry. The silence of the record of the superior court on that subject, is, therefore, not evidence that the cause is not properly and regularly before that court.

Although it is not necessary to place our decision of this question on the ground that the case we are considering is governed by the 70th section of the act for the regulation of civil actions, (*Stat. ed.* 1838. *p.* 61.) and the act of 1830, in addition thereto, ( *p.* 71.) providing for the entry of actions in the superior court after a reversal on writ of error, it may admit of a question whether it is not fairly embraced by them, their terms being sufficiently comprehensive : but it is observable, that those acts do not, by their terms, require any action, by the reversing court, in order to authorize an entry of such actions in the superior court. The provision is simply, that on reversal, the defendant in error " may enter" the action there ; thus strongly implying, that it is the right of the party, independent of any order of the reversing court. In this respect, the phraseology is quite different from that used in the 63d section of the act, (*p.* 58.) providing for the remanding of actions which are not appealable, where it is expressly made the duty of the higher court to remand ; thus implying some action by that court, as an authority for the entry of the cause in the court below.

The defendants, however, insist, that although the plaintiff may still further prosecute the action in which the property mentioned in the declaration was attached, notwithstanding the reversal of the judgment first rendered therein ; yet, as that was a final judgment when rendered, and was of the character of the judgment mentioned in the statute prescribing the time within which property attached shall be levied on by execution after final judgment, it was, on a just construction of that statute, the judgment therein intended ; and that, as the property cannot now be held to respond that judgment, the attachment of it is dissolved, and the lien created by it discharged. In support of this claim, they rely mainly on the cases of *Butler* v. *Bissell,* 1 *Root's R.* 102. and *Clapp* v. *Bell,* 4 *Mass. R.* 99. in the first of which it was decided, that an erroneous judgment in favour of the defendant, reversed for error, or annulled by the granting of a new trial, is to be deemed a final judgment, for the purpose of exonerating special bail ; and in the other, that such a

*Hartford,*
June, 1845.

Allen
*v.*
Adams.

judgment, although the action is subsequently reviewed, dissolved the attachment of property in the suit. Neither of these cases, however, nor those which have been adduced of a similar character and resting on the same principles, have any application to the point before us. In those cases, the first judgment (which was reversed or set aside) was in favour of *the defendant* in the suit, and they were decided on the ground that it was in favour of that particular party. In the case now before us, the judgment, and the only one rendered in the action in which the property was attached, was in favour of *the plaintiff* in that action. No judgment, therefore, has ever been rendered in that suit, which, if it had been technically and really a final judgment, would have released the property from the lien created by the attachment therein. The reasons are obvious why bail or property should be exonerated, by a judgment in favour of the defendant, although it may afterwards be set aside ; but it is difficult to perceive why a plaintiff should be held to have lost the security acquired by his attachment in a suit, merely by having a judgment rendered in his favour and subsequently reversed, when the action may be re-tried, and on such retrial, he may succeed in obtaining another judgment which shall be valid. The legal and proper effect of the reversal of the judgment being to extinguish and annul it, and thus wholly to deprive it of any force or effect, it certainly should require some very cogent reasons to show, that it was the judgment intended by the statute relied on ; especially, as such a construction of it would strip the plaintiff in that suit, without any default on his part, and even after judgment rendered in his favour, of the security obtained by his attachment in the suit. No such reasons have been advanced. That judgment was not an effective one, because it was not available at all to the plaintiff. It was not only voidable, but actually avoided. To hold that a judgment for the plaintiff, which could not be made effectual for the purpose of appropriating the property attached for his benefit, shall be treated as the final judgment contemplated by that statute, would be a palpable perversion of its object and meaning. That statute, in its very terms, speaks of a judgment, which the property attached may be "held to respond," and on which an execution may be issued and levied ; meaning, plainly, a levy which shall be

*Hartford,*
June, 1845.
———
Allen
*v.*
Adams.

effectual to appropriate the property in payment of the judgment. But, by the construction claimed by the defendants, it would apply to a judgment, on which, as the case might be, no execution could ever be issued, or where, if issued, it might be superseded, or where, if not superseded, but executed, the avails of the property could not be held by virtue of it, unless on other grounds than merely the validity of the judgment or execution.

Again; that judgment being annulled by its reversal, and the action being entered in the superior court, and now there pending, a final judgment is to be hereafter rendered in it. That judgment, if in favour of the plaintiff, will, at least equally with that which was reversed, and in reality exclusively, answer the description of that mentioned in the statute. Since, then, it is embraced by its terms, what reason is there for saying, that the first judgment was intended in preference to it, and that the property attached should not be held to respond it, if execution should be issued thereon, and levied within the time prescribed? None, certainly, unless it is, that it was intended that a valid and invalid judgment should be equally fruitless.

The superior court is, therefore, advised to render judgment for the plaintiff, for the value of the property mentioned in the contract declared on, or for the amount which may have been recovered in the original action in which it was attached, if less than such value.

In this opinion the other Judges concurred.

*Judgment for plaintiff.*