MARY-ANNE MULHOLLAND v. JAMES MULHOLLAND
(11225)

LAVERY, FREEDMAN and SCHALLER, Js.

Argued December 4, 1992—decision released May 4, 1993

---

*James C. Mulholland,* pro se, the appellant (defendant).

*Mary-Anne Ziewacz Mulholland,* pro se, the appellee (plaintiff).

FREEDMAN, J. The sole question presented by this appeal is whether a trial court may render a judgment of contempt after an appellate court has reversed the underlying order where the acts constituting the contempt occurred prior to the reversal.[1] We conclude that the sanction of contempt may be imposed on a party for the willful failure to pay any sums due under an order of child support that is on appeal at the time of the nonpayment, regardless of whether the sanction is imposed before *or after* the appellate reversal. This

---

[1] In his preliminary statement of the issues, the defendant set forth six issues to be presented in this appeal. His statement of the issue in his appeal brief raises only one issue: "Did the trial court err in finding the defendant in civil contempt and in ordering payment of $6,175.00 in order to purge the contempt when the Appellate Court had previously reversed the underlying judgment?" This single issue statement replaces and supersedes the preliminary statement of issues. Practice Book § 4065 (a).

In his appeal brief, the defendant properly includes a statement of facts. Practice Book § 4065 (c). In footnotes in this portion of the brief, however, the defendant challenges the trial court's calculation of his child support arrearage and the amount he was ordered to pay in order to purge his contempt. Because this claim is not properly presented in the argument portion of his brief, we will not address it. Practice Book § 4065 (d); *State* v. *Grant,* 221 Conn. 93, 107 n.13, 602 A.2d 581 (1992); *State* v. *Reddick,* 15 Conn. App. 342, 343, 545 A.2d 1109, cert. denied, 209 Conn. 819, 551 A.2d 758 (1988).

conclusion is dictated by our rules of practice, our case law and by sound considerations of public policy.

The following facts are pertinent to the disposition of this appeal. The parties' marriage was dissolved by order of the trial court on January 16, 1991. There were two minor children issue of the marriage, Colin born September 28, 1984, and Rachel born November 5, 1986. The issue of custody of the two minor children and all financial matters were reserved for trial at a later date. In March and April of 1991, a trial was held on the reserved issues. On April 23, 1991, the trial court rendered its oral decision. The court ordered that the parties would have joint custody of the minor children and that their primary residence was to be with the plaintiff. The court ordered the defendant to pay $260 per week for the support of Rachel and $100 per week for the support of Colin. There had been no pendente lite support orders. The defendant was also ordered to pay one half of any substantial expenses incurred by the plaintiff for "day care, summer camp, cultural or athletic enrichment programs, educational enhancement, private schooling or other similar services." The defendant was also ordered to pay one half of "the cost of [medical] insurance for the minor children as well as [one half] of any unreimbursed medical, dental, orthodontic, prescriptive, optical, mental health or other health related expenses of the minor children."

The defendant immediately appealed to this court from the April 23 orders of the trial court. On May 3, 1991, the defendant sought a stay of the orders of child support from the trial court. On June 11, 1991, the trial court denied the stay. The defendant filed no further applications for a stay of execution, nor did he seek review from this court of the denial of the stay.

The defendant made the child support payments as ordered through late November or early December of

1991. He then stopped making payments. On December 30, 1991, the plaintiff filed a motion for contempt in the trial court. This motion was filed while the defendant's appeal from the trial court's order of April 23, 1991, was pending before this court. Oral argument on the defendant's appeal was heard by this court on December 6, 1991.

On January 14, 1992, the trial court began its hearing on the plaintiff's motion for contempt. No orders were entered at that time, although the trial court warned the defendant that he was risking a judgment of contempt, and ordered him to make the payments. On February 11, 1992, this court reversed the trial court's decision regarding the financial orders, and remanded the case for a new hearing on all financial issues. *Mulholland* v. *Mulholland,* 26 Conn. App. 585, 602 A.2d 1054 (1992). On March 5, 1992, the trial court again took up the contempt motion. It found that there was an arrearage of $6175 as of the date of this court's reversal of the underlying order and found the defendant to be in contempt of court. The trial court ordered the defendant incarcerated until he purged the contempt by paying the sum of $6175 to the plaintiff. On the following day, the defendant purged his contempt and was released from incarceration. This appeal followed.[2]

The resolution of the issue presented by this appeal turns, first and foremost, on the enforceability of a child support order pending appeal and the effect that appellate reversal has on the duty to have made such payments in a timely fashion. We begin our analysis of these issues by examining Practice Book § 4046.[3] Gen-

---

[2] Notwithstanding the fact that the defendant has purged himself of the contempt and has been released from incarceration, this appeal is not moot. *Sgarellino* v. *Hightower,* 13 Conn. App. 591, 593–95, 538 A.2d 1065 (1988).

[3] Practice Book § 4046 provides in pertinent part: "In all actions, except where otherwise provided by statute or other law, proceedings to enforce

erally speaking, the filing of an appeal will automatically stay any proceedings to enforce or carry out a judgment until the final determination of the cause. Practice Book § 4046. No automatic stay, however, applies to orders concerning periodic alimony or support. Id. In such cases, if the obligor wants to avoid payment, he or she must make an application for a stay of the order pending appeal. Practice Book § 4047.

The provisions of Practice Book § 4046 reflect judicial recognition of the needs of children and the public policy considerations involved. The law has universally recognized that the parent-child relationship and the support obligations created within it are unique. See *Buchholz's Appeal from Probate*, 9 Conn. App. 413, 418, 519 A.2d 615 (1987); *Weisbaum* v. *Weisbaum*, 2 Conn. App. 270, 272–73, 477 A.2d 690 (1984). The failure of a marital relationship often has profound effects on the parties and their children and may, as well, affect society in general. Where the need for child support is established and ordered by the court, it is of the utmost importance for the welfare of the child that such payments be made in a timely fashion. It is also in the interest of society that the child be supported by those obligated to support the child and that the child not be required to seek public assistance to satisfy those needs unless otherwise necessary. Accordingly, § 4046 man-

or carry out the judgment shall be automatically stayed until the time to take an appeal has expired; if an appeal is filed, such proceedings shall be stayed until the final determination of the cause; and, if the case goes to judgment on appeal, until ten days after the decision is announced; but if the judge who tried the case is of the opinion that an extension to appeal is sought or the appeal is taken only for delay or that the due administration of justice so requires that judge may at any time, upon motion and hearing, order that the stay be terminated. *This section shall not apply* to actions concerning attorneys pursuant to chapter 2, *to periodic alimony and support orders,* as well as to custody or visitation orders in domestic relations matters brought pursuant to chapter 17, to criminal matters brought pursuant to chapter 22 through 30 or to juvenile matters brought pursuant to chapters 31 through 40." (Emphasis added.)

dates that, unless stayed by the court, periodic alimony and child support orders remain in effect and unabated during the pendency of an appeal.[4]

For these reasons, the defendant's reliance on *Reilly* v. *State,* 119 Conn. 217, 220–21, 175 A. 582 (1934), *Woodruff* v. *Bacon,* 35 Conn. 97, 102 (1868), and *Allen* v. *Adams,* 17 Conn. 67, 73 (1845), is misplaced. While those cases do stand for the proposition that appellate reversal "restore[s] the parties to the position in which they were before the judgment was rendered"; *Reilly* v. *State,* supra, 221; that common law principle is not controlling in the context of child and spousal support orders in light of § 4046.

Before starting our analysis of the law of contempt as it applies to this case, it is important to note that in the contempt proceedings that are the subject of this appeal, which were initiated before the support order was vacated, the plaintiff sought only to collect unpaid support installments that became due and payable *prior* to the judgment of this court vacating the support order. The plaintiff did *not* seek to collect by way of these contempt proceedings, nor could she do so, any child support that became due *after* the support order was vacated by this court. Because the original child support order was no longer enforceable as a judicial

[4] An obligor under a child or spousal support order can, pending appeal, seek a stay in the trial court of the child support order, or any portion thereof, pursuant to Practice Book § 4047. If the trial court refuses to grant such a stay, the obligor can seek appellate review of the denial of a stay pursuant to Practice Book §§ 4049 and 4053. These rules serve to ameliorate any harsh implications that might be caused where a trial court's child or spousal support order is so unreasonable that the obligation it imposes works a severe hardship on an obligor such that a partial or complete granting of a stay will more fairly strike an equitable balance between the parties with respect to their respective child support obligations pending appeal.

It is important to note that the defendant in this case sought such a stay. The stay was denied by the trial court. He did not seek appellate review of the denial.

decree after this court's reversal of the order on February 11, 1992, there could be no contempt for the nonpayment of child support under that order occurring after that date. See *Calway* v. *Calway,* 26 Conn. App. 737, 744, 603 A.2d 434 (1992) (party cannot be held in contempt for noncompliance with nonexisting order).[5]

In addition, a distinction must be made between an erroneous order and a void order. In *Mulholland* v. *Mulholland,* supra, we reversed only the financial orders of the trial court. In that appeal, it was readily apparent that, at the time of the dissolution, the trial court had jurisdiction of the subject matter and the parties. Because the court had jurisdiction to dissolve the marriage, it also had, incident thereto, the jurisdiction to order child support. See General Statutes § 46b-84 (d). Thus, the judgment of dissolution and the financial orders were valid until and unless overturned on appeal. An erroneous order of child support is as binding as one that is correct until set aside or corrected in a manner provided by law. *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 147, 496 A.2d 476 (1985). This distinction between a court order that is void and one that is merely erroneous is critical to the issue presented by this appeal.

Contempt proceedings are a proper means of enforcing a court order of child support. A willful failure to pay court ordered child support as it becomes due constitutes indirect civil contempt. *Duve* v. *Duve,* 25 Conn. App. 262, 269, 594 A.2d 473, cert. denied, 220 Conn. 911, 597 A.2d 332 (1991); see General Statutes

---

[5] The dissent concludes by stating "[t]he issue here concerns solely the power of the Superior Court to hold someone in contempt of court for the failure to obey an order that has been reversed." This statement overly simplifies the issue. The issue before the trial court on March 5 was whether the defendant failed to comply with the order before it was reversed and while it was still in full force and effect, not whether he failed to comply with it after it was reversed.

§ 46b-215. In the absence of a stay, the trial court continues to have jurisdiction to enforce its orders during an appeal from those orders. *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 192 Conn. 1, 7, 469 A.2d 778 (1984).

In *Cologne* v. *Westfarms Associates,* supra, 147–49, our Supreme Court held that contempt proceedings may be used to enforce a court order that is later reversed on appeal. " 'The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses his obedience, does so at his peril.' *United States* v. *United Mine Workers,* 330 U.S. 258, 303, 67 S. Ct. 677, 91 L. Ed. 884 (1947). '[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.' Id., 293; see also *W. R. Grace & Co.* v. *Rubber Workers,* 461 U.S. 757, 766–67, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983); *DeMartino* v. *Monroe Little League, Inc.,* 192 Conn. 271, 276–77, 471 A.2d 638 (1984)." Id., 147. "[T]here is no privilege to disobey a court's order because the alleged contemnor believes that it is invalid." Id., 148.

The defendant acknowledges in his brief that "had [he] been adjudicated to have been in contempt *prior* to and not *subsequent* to the reversal of the underlying judgment, *Cologne* would indeed be dispositive . . . ." (Emphasis in original.) He attempts to distinguish *Cologne* in his brief, however, by emphasizing that "[i]n this case . . . the reversal of the underlying judgment was *prior* to the contempt hearing." (Emphasis in original.) The defendant's arguments to the contrary notwithstanding, we believe that this is a distinction without a difference in light of the fact that in this case an appeal does not automatically stay the enforcement

of a child support order. Moreover, our reading of *Cologne* leads us to the conclusion that an intervening appellate reversal of an underlying judicial mandate will not affect the contempt powers of the trial court as to violations of that mandate that occurred prior to the reversal.

As previously discussed, in *Cologne* our Supreme Court concluded that the trial court had the authority to hold the defendants in contempt notwithstanding the ultimate reversal of the underlying court order. Id., 147–49. The court, however, reversed the trial court's finding of contempt because it was not based on competent evidence. Id., 149–57. Under such circumstances, a remand for a proper evidentiary hearing would normally be in order. The *Cologne* court, however, did not direct any further proceedings. Id., 157. Significantly, the reason why no further proceedings were directed was *not* because those proceedings would take place *after* the appellate reversal of the underlying order. The *Cologne* court did not suggest any such bar to further proceedings. Rather, the court reasoned that, under the circumstances of the case, the purposes of civil contempt could not be advanced by such further proceedings because the defendants had complied with the underlying court order from the day after they were found in contempt through the date of the court's decision reversing the underlying order. The *Cologne* court recognized that in order to effectuate the purposes of civil contempt, the contemnor should be able to obtain release from the sanction imposed by the court through compliance with the judicial decree. Id. Without any need to compel compliance with the injunction at issue in *Cologne,* then, further contempt proceedings made no sense. Thus, *Cologne* does not stand for the proposition that the intervening appellate reversal poses an impediment to further proceedings on the motion for contempt.

Contempt proceedings after appellate reversal of the underlying court order were approved in *Rivenbark* v. *Southmark Corporation,* 93 N.C. App. 414, 378 S.E.2d 196 (1989). There, the court affirmed a finding of contempt notwithstanding the fact that it simultaneously found the underlying order that was violated to be erroneous. The *Rivenbark* court, however, vacated the sanction imposed for that contemptuous conduct because the trial court had not given proper consideration to sanctions less drastic than that imposed. The court then remanded the matter for additional findings of fact regarding the appropriate contempt sanction. The result in *Rivenbark,* then, supports the imposition of a sanction for willful disobedience of a court order after the reversal of that court order.

In light of *Cologne* and *Rivenbark,* we see no reason why the *timing* of the contempt adjudication alone should affect the trial court's ability to remedy disobedience to its orders when the disobedience occurred while the orders were in full force and effect. Here, the defendant chose to disobey a lawful, although subsequently vacated, court order. The defendant concedes, as he must, that under *Cologne,* he could have been held in contempt any time prior to February 11, 1992. Because the trial court proceedings were not completed by that date, however, he should not be allowed to escape the consequences of his earlier contemptuous conduct. The practical effect of the defendant's argument would be that if an obligor can avoid the service of a contempt citation or otherwise delay the hearing of the contempt proceedings while an appeal is pending, and if that appeal is ultimately successful, the obligor has circumvented the mandate of Practice Book § 4046 and undermined the authority of our courts to remedy such noncompliance. Under these circumstances, "[j]udgments could be accepted or rejected at whim with impunity and would be essentially advisory

in nature . . . resulting in a discomfiture of the judicial process." *State ex rel. Girard* v. *Percich,* 557 S.W.2d 25, 36 (Mo. App. 1977).

In addition to frustrating important institutional concerns of our courts, a result different from that reached by us today would also frustrate clearly defined public policy regarding the parental obligation to support minor children. Both state and national policy has been, and continues to be, to ensure that all parents support their children and that children who do not live with their parents benefit from adequate and enforceable orders of child support. *Turner* v. *Turner,* 219 Conn. 703, 713–20, 595 A.2d 297 (1991); 42 U.S.C. § 651 et seq. (Part D of Title IV of the Social Security Act). Child support is now widely recognized as an essential component of an effective and comprehensive family income security strategy. See generally A. Houseman, "Poverty Law Developments and Options for the 1990s," 24 Clearinghouse Review 2, 5–7 (1990); P. Roberts, "Child Support and Beyond: Mapping a Future for America's Low-Income Children," 22 Clearinghouse Review 594 (1988). As with any income source, the effectiveness of child support in meeting the needs of children is, of necessity, increased when payments are made regularly and without interruption.

The defendant seeks our approval of his decision to avoid his parental duty of timely support as ordered by the trial court, thus impairing the income flow to his family unilaterally and with impunity. We will not approve such conduct. "[T]here is no privilege to disobey a court's order because the alleged contemnor believes that it is invalid." *Cologne* v. *Westfarms Associates,* supra, 148.

The judgment is affirmed.

In this opinion SCHALLER, J., concurred.

LAVERY, J., dissenting. Because I believe that the holding of the majority opinion is contrary to established law regarding the effect of an appellate reversal on an order of the Superior Court, I respectfully dissent.

The sole issue in this appeal, whether the trial court may render a judgment of civil contempt for failure to comply with an order of the court after an appellate level court has reversed the underlying order, is an issue of first impression in Connecticut.

It is well settled in Connecticut that the reversal of a trial court judgment by an appellate tribunal renders that judgment void and without effect. *Reilly* v. *State,* 119 Conn. 217, 220–21, 175 A. 582 (1934); *Brennan* v. *Berlin Iron Bridge Co.,* 73 Conn. 412, 415–16, 47 A. 668 (1900); *Woodruff* v. *Bacon,* 35 Conn. 97, 102 (1868); *Allen* v. *Adams,* 17 Conn. 67, 73 (1845). The effect of a reversal upon a trial court judgment was first discussed nearly 150 years ago in the case of *Allen* v. *Adams,* supra. In the present case, as in *Allen* v. *Adams,* supra, "the defendant[']s claim rests upon the effect that is to be given to the judgment of reversal rendered by [an appellate level court]." Id., 72. On this issue, the court wrote: "Now, it is very clear, that, when that judgment was reversed, it ceased to be a judgment of any description, because the effect of such reversal was wholly to vacate and annul it. This is plain from the nature of the proceeding and the form of the entry of a judgment of reversal. Legally speaking, therefore, the judgment so reversed has now no existence. In legal contemplation, it is annihilated, and it is as if it had never been rendered." Id., 73.

In 1868, the Supreme Court again took up the effect of its reversal of a Superior Court order in *Woodruff* v. *Bacon,* supra. That case considered the effect of the Supreme Court's reversal of a Superior Court order

erasing a case from its docket. Of the reversal, the court wrote: "The effect, therefore, of the reversal of the order was to leave the cause as if it had never been made. The order ceased any longer to have any effect whatever, or properly any existence; and being rendered wholly void, it was effectually destroyed and removed out of the way by the reversal of it." Id., 102.

In *Brennan* v. *Berlin Iron Bridge Co.,* supra, the Supreme Court contemplated the use of a prior favorable reversed judgment in the prosecution of a second action. The court noted: "It is a general rule that the reversal of an erroneous judgment and the remanding of the case for further proceedings, restores the parties to the same condition in which they were before the erroneous judgment was rendered, so that they may proceed with the case in the trial court in the same manner as if the case had not been tried and decided, except as to matters not affected by the judgment of reversal. Freem. on Judgm. § 481; *Gleason* v. *Chester,* 1 Day, 152 [1803]." Id., 415–16.

The effect of appellate reversal was most recently discussed in the 1934 case of *Reilly* v. *State,* supra. In describing the nature of a writ of error, Chief Justice William M. Maltbie wrote: "That the writ is not a proceeding independent of the original action in any broad sense is apparent when we consider that the effect of a reversal is to destroy the judgment in that action, to restore the parties to the position in which they were before the judgment was rendered, and to permit the re-entry of the case in the trial court for disposition as though no judgment had been entered." Id., 220–21.

This survey of case law clearly indicates that since the earliest years of Connecticut jurisprudence, our Supreme Court has recognized that the reversal of an order of the Superior Court renders that order com-

pletely void, and puts the parties back in the positions they occupied before the original action was brought.

In this case, the order directing child support payments was reversed on February 11, 1992. On March 5, when the trial court rendered a judgment of contempt against the defendant, there no longer existed a court order with which the defendant was to comply. "Thus, if no prior court order exists, an actor cannot obey it, and, therefore, the trial court cannot hold the actor in contempt for noncompliance with a nonexisting order." *Calway* v. *Calway,* 26 Conn. App. 737, 744, 603 A.2d 434 (1992). Here, the trial court improperly held the defendant in contempt for "noncompliance with a nonexisting order."

In *People ex rel. Scott* v. *Police Hall of Fame,* 69 Ill. App. 3d 501, 387 N.E.2d 856 (1979), the Illinois Appellate Court encountered a case similar to this one. An action was originally brought by the state attorney general, who sought injunctive relief and an accounting from two charitable organizations. The trial court ordered the defendants to pay $417,928 in compensatory damages and $150,000 in punitive damages. The defendants appealed that order. The Appellate Court reversed the award of punitive damages and affirmed the award of compensatory damages. Following the Appellate Court's ruling, the defendants were served with a citation to discover assets. A hearing was held, and the defendants did not appear. The trial court then rendered a judgment of contempt.against the defendants. The defendants appealed the contempt judgment to the Illinois Appellate Court.

The Illinois Appellate Court framed the issue before it as "whether supplementary proceedings in the form of a citation to discover assets remain viable where the judgment upon which they are based has been reversed by this court and the cause remanded for further con-

sideration of the amount for which the respondents are liable." Id., 503. The court stated, consistent with our general rule regarding reversals of judgment, that "[a]s a general proposition, when a judgment or order is reversed, the effect is to abrogate the judgment or order and leave the case as it stood prior to the entry thereof." Id. The court reasoned that "[s]ince the underlying judgment was reversed, it would seem to follow with complete logic that any actions for collection of that judgment must necessarily fail." Id. This reasoning led the court to the inevitable conclusion that "[s]ince the supplementary proceedings must be dismissed, it is impossible for respondents now to obey the original order entered therein. The findings of contempt . . . must therefore fall with the supplementary proceedings." Id., 504–505. In this case, the motion for contempt was a "supplementary proceeding," which I believe necessarily fell with the reversal of the trial court's financial orders.

The majority relies exclusively on *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 496 A.2d 476 (1985), (*Cologne II*), and *Rivenbark* v. *Southmark Corporation,* 93 N.C. App. 414, 378 S.E.2d 196 (1989), to support the proposition that an order of contempt may be issued by a trial court after the underlying trial court order that gave rise to the contempt citation has been reversed by an appellate level court. Both *Cologne* and *Rivenbark* can be clearly distinguished from this case.

A review of the chronology of the *Cologne* case is helpful in drawing the important distinction between that case and the present case. On March 2, 1983, the trial court rendered a judgment enjoining the *Cologne* defendants from prohibiting the plaintiffs access, for certain political purposes, to the privately owned Westfarms shopping mall. See *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 469 A.2d 1201 (1984) (*Cologne I*). On April 22, 1983, the trial court found the defendants

in contempt for refusing to comply with its March 2 order. The plaintiffs were granted access to the mall the next day, April 23, 1983. The following year, on January 17, 1984, the Supreme Court issued its decision in *Cologne I*, holding that the trial court erred in concluding that the rights of free speech guaranteed by our state constitution may be exercised on private property consisting of a large regional shopping center, contrary to the wishes of its owners. The defendants in *Cologne I*, therefore, prevailed on the merits of their appeal from the March 2, 1983 injunction order. The defendants, however, had also filed an appeal of the April 22, 1983 contempt judgment. They claimed that because the injunction on which the contempt was based was held in *Cologne I* to have been issued erroneously, the court could not hold them in contempt for failing to obey its injunctive order. *Cologne II*, supra, 147.

In *Cologne II*, the Supreme Court held that although the trial court's March 2, 1983 injunction was invalid, the trial court nevertheless properly found the defendants in contempt for failing to obey the injunction. This case is in stark contrast to *Cologne II*. In *Cologne II*, the trial court issued an injunction against the defendants. The defendants ignored the trial court's order and were adjudged by the trial court to be in contempt. The defendants appealed from the injunction order and the Supreme Court held that the trial court's injunction was invalid. The defendants appealed from the contempt order, and the Supreme Court held that the contempt order was properly issued. In the present case the trial court ordered the defendant to make certain child support payments. The defendant refused to comply with the trial court's order. The trial court's order was reversed by this court, and *then* the defendant was found to be in contempt of the trial court's original order. The important distinction is that in *Cologne II*

the underlying order was found to be invalid by an appellate level court *after* the contempt order was issued, while in this case the underlying order was found to be invalid by an appellate level court *before* the contempt order was issued. I believe that this distinction is fatal to the plaintiff's assertion that *Cologne II* is dispositive of the issue in this case.

*Rivenbark* v. *Southmark Corporation,* supra, is likewise distinguishable from the present case. In *Rivenbark,* the plaintiff sued for breach of contract when the defendants allegedly failed to give their approval of subleases properly submitted by the plaintiff. In its complaint, the plaintiff sought a temporary injunction that would allow it to stay in possession of certain property and collect rents from it. The defendants denied the plaintiff's allegations, and counterclaimed that the plaintiff had breached the contract between the parties. After a hearing, the trial court denied the plaintiff's motion for injunctive relief, and ordered that after certain conditions were met, the defendants would be entitled to possession of the disputed property, and would be allowed to collect rents pending a trial on the merits.

Several weeks after the trial court issued its interlocutory order, the defendants moved that the plaintiff be held in contempt of court because, the defendants alleged, the plaintiff had violated the court's order by its collection of certain rent payments. After another hearing, the court ordered the plaintiff to pay the defendants $46,704.88 in improperly collected rent moneys. The plaintiff appealed that order, but its appeal was dismissed as interlocutory.

Nearly two years later, the defendants filed a motion asking the trial court to dismiss the plaintiff's complaint, and to hold the plaintiff in contempt for its failure to pay the defendants the rent moneys as ordered.

The trial court granted the defendants' motions, and the plaintiff appealed. The Court of Appeals concluded that the underlying trial court order that gave rise to the contempt finding was erroneous, but not void, and affirmed the trial court's judgment of contempt.

Like *Cologne II, Rivenbark* is clearly distinguishable from the present case because the contempt order was issued *before* an appellate tribunal found the underlying trial court order to be defective. *Cologne II* and *Rivenbark* are directly on point with each other, but not with the present case. There is an extremely important distinction between a trial court's finding of contempt when a party fails to obey a properly issued court order before an appeal is taken or decided (even if the underlying order is erroneous), and a trial court's finding a party in contempt when an appellate judgment, reversing the underlying order, is literally on the courtroom shelves.

The majority states that "[the] distinction between a court order that is void and one that is merely erroneous is critical to the issue presented by this appeal." Citing *Cologne II,* supra, the majority concludes that "[a]n erroneous order of child support is as binding as one that is correct until set aside or corrected in a manner provided by law." I agree that the support orders had full effect until they were reversed on February 11, 1992. The fact that the order had full effect until that day, however, is not an issue in this case. What our case law dictates is that after our reversal on February 11, 1992, the order of child support *became void.* The distinction between void and erroneous orders relied on by the majority, therefore, is inapplicable in this case.

The majority correctly points out that, under our rules of practice, proceedings to enforce alimony and support orders are not stayed during the pendency of

an appeal of those orders. Practice Book § 4046. The majority also properly states that § 4046 is designed to foster the important public policy of ensuring that support orders are complied with regardless of the subsequent history of the litigation. The existence or nonexistence of a stay, however, is not an issue presented by this case. Again, the sole issue in this case is whether a trial court may issue an order of civil contempt once the underlying order has been reversed by an appellate court. Section 4046, whose language is devoid of any reference to the effect of appellate reversal, has, I believe, no effect on the 150 years of Connecticut case law holding that a reversed order has no effect.

At the conclusion of his brief the defendant made a cursory restitution claim for the $6175 he paid to purge the contempt order. Apparently in response to this claim, the plaintiff asserts that the trial court correctly calculated the arrearage owed by the plaintiff as accrued between the date of the support order, April 23, 1991, and the date we reversed that order, February 11, 1992. The plaintiff claims that the trial court correctly calculated the arrearage, and that the defendant properly paid that amount when he purged the contempt. Obviously, there has been no trial court hearing on the issue of restitution, nor has this issue been properly briefed by the parties. On remand, I would direct the trial court, in addition to vacating the contempt order, to hold a hearing on the issue of restitution, taking into account this state's statutory mandate that parents are liable for the support of their minor children. General Statutes § 46b-215 (a).

Section 46b-215 (a) provides in part: "The superior court or a family support magistrate shall have authority to make and enforce orders for payment of support against any person who neglects or refuses to furnish necessary support to . . . a child under the age of

eighteen, according to his or her ability to furnish such support . . . ." "There is nothing in this language, or in the important public policy that it reflects, to suggest that the obligation of a parent to support [his] child, according to [his] ability, is subject to a condition precedent of a formal demand. That obligation is ongoing, and does not require the trigger of a request by those persons who are shouldering that responsibility." *Favrow* v. *Vargas,* 222 Conn. 699, 717, 610 A.2d 1267 (1992). In determining the defendant's liability for the support of his children during the period of nonpayment, the Child Support Guidelines in effect at the time of the hearing would provide the trial court with a starting point.

When we reversed the trial court's financial support order of April 23, 1991, we did so because the trial court improperly balanced the incomes of the parties through its support orders. *Mulholland* v. *Mulholland,* 26 Conn. App. 585, 602 A.2d 1054 (1992). Our reversal did not terminate or interrupt the defendant's legal duty to support his children. "The defendant's duty to support . . . is a continuing obligation, which ordinarily exists even apart from any judgment or decree of support." *Atlas Garage & Custom Builders, Inc.* v. *Hurley,* 167 Conn. 248, 255, 355 A.2d 286 (1974); *Pezas* v. *Pezas,* 151 Conn. 611, 617, 201 A.2d 192 (1964). "A parent has both a statutory and common law duty to support his minor children within the reasonable limits of his ability." *Weisbaum* v. *Weisbaum,* 2 Conn. App. 270, 272–73, 477 A.2d 690 (1984).

I disagree with the majority's assertion that "[t]he practical effect of the defendant's argument would be that if an obligor can avoid the service of a contempt citation or otherwise delay the hearing of the contempt proceedings while an appeal is pending, and if that appeal is ultimately successful, the obligor has circumvented the mandate of Practice Book § 4046 and under-

mined the authority of our courts to remedy such non-compliance." The circumstances of this case are rare. The uniqueness of the situation this court has encountered here is reflected in the paucity of authority in every jurisdiction on the issue of whether a trial court can issue an order of contempt after appellate reversal. Furthermore, a defendant who attempts to circumvent the authority of our courts would not only be risking being held in contempt as soon as payment is withheld, but would be gambling on a very unlikely outcome on appeal. The standard of review in an appeal of a support order remains abuse of discretion, and, as Chief Justice Peters recently wrote, "our appellate decisions emphasize that an abuse of discretion leading to a reversal is rare." *Madigan* v. *Madigan,* 224 Conn. 749, 758, 620 A.2d 1276 (1993).

As the majority correctly points out, this case touches on important and timely public policy questions. The issue of this case, however, is not whether our courts sanction the avoidance of court orders; clearly they do not.[1] The issue here concerns solely the power of the

---

[1] In *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 147–48, 496 A.2d 476 (1985), our Supreme Court emphatically stated: " 'The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses his obedience, does so at his peril.' *United States* v. *United Mine Workers,* 330 U.S. 258, 303, 67 S. Ct. 677, 91 L. Ed. 884 (1947). '[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.' Id., 293; see also *W. R. Grace & Co.* v. *Rubber Workers,* 461 U.S. 757, 766–67, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983); *DeMartino* v. *Monroe Little League, Inc.,* 192 Conn. 271, 276–77, 471 A.2d 638 (1984). . . . [T]here is no privilege to disobey a court's order because the alleged contemnor believes that it is invalid. Particularly is this true of attorneys [such as the defendant here]." " 'An attorney who believes a court order is erroneous is not relieved of the duty to obey it. The proper course of action, unless and until the order is invalidated by an appellate court, is to comply and cite the order as reversible error should an adverse judgment result. *Maness* v. *Meyers,* 419 U.S. 449, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975).' *Chapman* v. *Pacific Telephone & Telegraph Co.,* 613 F.2d 193, 197 (9th Cir. 1979); see *Barnd* v. *Tacoma,* 664 F.2d 1339, 1342 (9th Cir. 1982)." Id., 148–49.

Superior Court to hold someone in contempt of court for the failure to obey an order that has been reversed.

I would reverse the judgment of the trial court and remand the case for the proceedings I have outlined above.

Accordingly, I respectfully dissent.