MARY-ANNE MULHOLLAND *v.* JAMES C. MULHOLLAND
(14821)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued March 22—decision released June 14, 1994

*James C. Mulholland,* pro se, the appellant (defendant).

*Mary-Anne Ziewacz Mulholland,* pro se, the appellee (plaintiff).

BORDEN, J. The sole issue in this appeal is whether, after a child support order has been reversed on appeal, a trial court may render a judgment of civil contempt for wilful failure to pay that support order if the acts constituting the contempt occurred prior to the reversal. The defendant appeals, upon our grant of certification,[1] from the judgment of the Appellate Court affirming the judgment of the trial court that held the defendant in civil contempt of court.

The defendant claims that the Appellate Court improperly affirmed the trial court's contempt judgment because the intervening appellate reversal of the underlying order rendered that order void and without effect. We disagree and affirm the judgment of the Appellate Court.

The opinion of the Appellate Court states most of the pertinent facts and procedural history. "The parties' marriage was dissolved by order of the trial court [*Barall, J.,*] on January 16, 1991. There were two minor

---

[1] We certified the following issue for appeal: "May the trial court render a judgment of civil contempt for failure to comply with an order of the court after an appellate court has revised the underlying order?" *Mulholland* v. *Mulholland,* 227 Conn. 905, 632 A.2d 693 (1993). In view of our conclusion that the trial court may do so if, as in this case, the trial court's order involves child support, we need not answer the certified question in the broad terms in which it is framed.

children issue of the marriage, Colin born September 28, 1984, and Rachel born November 5, 1986. The issue of custody of the two minor children and all financial matters were reserved for trial at a later date. In March and April of 1991, a trial was held on the reserved issues. On April 23, 1991, the trial court rendered its oral decision. The court ordered that the parties would have joint custody of the minor children and that their primary residence was to be with the plaintiff. The court ordered the defendant to pay $260 per week for the support of Rachel and $100 per week for the support of Colin. There had been no pendente lite support orders. The defendant was also ordered to pay one half of any substantial expenses incurred by the plaintiff for 'day care, summer camp, cultural or athletic enrichment programs, educational enhancement, private schooling or other similar services.' The defendant was also ordered to pay one half of 'the cost of [medical] insurance for the minor children as well as [one half] of any unreimbursed medical, dental, orthodontic, prescriptive, optical, mental health or other health related expenses of the minor children.'

"The defendant immediately appealed to [the Appellate Court] from the April 23 orders of the trial court. On May 3, 1991, the defendant sought a stay of the orders of child support from the trial court. On June 11, 1991, the trial court denied the stay. The defendant filed no further applications for a stay of execution, nor did he seek review from [the Appellate Court] of the denial of the stay.

"The defendant made the child support payments as ordered through late November or early December of 1991. He then stopped making payments. On December 30, 1991, the plaintiff filed a motion for contempt in the trial court. This motion was filed while the defendant's appeal from the trial court's order of April 23, 1991, was pending before [the Appellate

Court]. Oral argument on the defendant's appeal was heard by [the Appellate Court] on December 6, 1991.

"On January 14, 1992, the trial court [*Norko, J.,*] began its hearing on the plaintiff's motion for contempt. No orders were entered at that time, although the trial court warned the defendant that he was risking a judgment of contempt, and ordered him to make the payments. On February 11, 1992, [the Appellate Court] reversed the trial court's decision regarding the financial orders, and remanded the case for a new hearing on all financial issues. *Mulholland* v. *Mulholland,* 26 Conn. App. 585, 602 A.2d 1054 (1992) [*Mulholland I*].[2] On March 5, 1992, the trial court again took up the contempt motion. It found that there was an arrearage of $6175 as of the date of [the Appellate Court's] reversal of the underlying order and found the defendant to be in contempt of court. The trial court ordered the defendant incarcerated until he purged the contempt by paying the sum of $6175 to the plaintiff. On the following day, the defendant purged his contempt and was released from incarceration." *Mulholland* v. *Mulholland,* 31 Conn. App. 214, 216–17, 624 A.2d 379 (1993) (*Mulholland II*).

The following evidence supported the trial court's adjudication of contempt. The defendant, who was a lawyer in private practice, unilaterally had stopped making child support payments since December, 1991. Except for one payment, the defendant had not made any of the required payments toward the health care benefits for the children for approximately one year. From July, 1990, through February, 1991, the defendant had received approximately $16,000 from his law

[2] In *Mulholland I,* supra, 26 Conn. App. 585, the Appellate Court reversed the financial orders of the trial court because the court improperly had entered the child support orders for the purpose of balancing the incomes of the parties, in violation of this court's holding in *Battersby* v. *Battersby,* 218 Conn. 467, 473, 590 A.2d 427 (1991).

firm. Further, in early May, 1991, the defendant's law firm had settled a personal injury case for approximately $1.2 million, of which the defendant received approximately $130,000 as his portion of the fee. Out of that draw, he paid approximately $60,000 in past and current taxes. From the funds remaining, he voluntarily paid his new wife's premarital debts in the amount of approximately $9000 and paid approximately $2000 for his wedding and honeymoon. The trial court rejected the defendant's claim that his failure to meet the court's order had not been wilful, and found instead that he had chosen to ignore the order. Consequently, the trial court rendered the judgment of contempt at issue in this case.

The defendant appealed to the Appellate Court. That court, with one judge dissenting, affirmed the judgment of the trial court, reasoning that the trial court's judgment was based on "our rules of practice, our case law and . . . sound considerations of public policy." *Mulholland II,* supra, 31 Conn. App. 216. This appeal followed.

The defendant, relying principally on the reasoning and authorities advanced by Judge Lavery's dissent in the Appellate Court, claims that, once the Appellate Court reversed the underlying child support order on February 11, 1992; see *Mulholland II,* supra, 31 Conn. App. 225; that order became "completely void." Therefore, the defendant argues, the parties were put "back in the position they occupied before the original [dissolution] action was brought," so that on March 5, 1992, when the trial court held the defendant in contempt, "there no longer existed a court order with which the defendant was to comply." Although the defendant's argument has a certain metaphysical appeal, and has some support in the general law of contempt, under the circumstances of this case we disagree with it.

We first note that the trial court's judgment of contempt was based solely on the defendant's failure to

make the court-ordered payments only until February 11, 1992, the date of the Appellate Court's reversal in *Mulholland I*, supra, 26 Conn. App. 585. The plaintiff did not seek, and the trial court did not render, a judgment of contempt for any conduct of the defendant after that date. As the Appellate Court properly noted, "[b]ecause the original child support order was no longer enforceable as a judicial decree after [that] court's reversal of the order on February 11, 1992, there could be no contempt for the nonpayment of child support under that order occurring after that date." *Mulholland II*, supra, 31 Conn. App. 219–20.

In *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 496 A.2d 476 (1985) *(Cologne II)*, we considered a question similar to that posed by this case. On March 2, 1983, the trial court in *Cologne II* had enjoined the defendants from prohibiting the plaintiffs access to the defendants' shopping mall for specified purposes. The defendants appealed from that judgment. While the judgment was on appeal, on April 22, 1983, the trial court held the defendants in civil contempt for violating the injunction. Id., 145. The defendants, although thereafter complying with the injunction by permitting the plaintiffs access to the mall, also appealed from the judgment of contempt. Id., 142. Thereafter, on January 17, 1984, this court reversed the March 2, 1983 injunction of the trial court and remanded the case "with direction to render judgment for the defendants." *Cologne* v. *Westfarms Associates*, 192 Conn. 48, 66, 469 A.2d 1201 (1984) *(Cologne I)*.

In *Cologne II*, we considered the validity of the trial court's April 22, 1983 judgment of contempt. The defendants argued that "because the injunction upon which their contempt was based was held in [*Cologne I*], to have been erroneously issued, the court could not hold them in contempt for failing to obey its injunctive order." *Cologne II*, supra, 197 Conn. 147. We rejected

that argument, stating that an order entered by a court with proper jurisdiction "must be obeyed by the parties until it is reversed by orderly and proper proceedings." (Internal quotation marks omitted.) Id. We noted that a party has a duty to obey a court order "however erroneous the action of the court may be . . . ." (Internal quotation marks omitted.) Id. We registered our agreement with the "long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed . . . ." (Internal quotation marks omitted.) Id., 148. Finally, we emphasized that "court orders must be obeyed; there is no privilege to disobey a court's order because the alleged contemnor believes that it is invalid." Id.[3]

*Cologne II*, is both similar to and different from this case. It resembles this case in that: (1) it involved a civil contempt; and (2) we affirmed the judgment of civil contempt even though we had previously reversed the underlying order. Nonetheless, it is different from this case because, when the trial court rendered the judgment of contempt at issue in *Cologne II*, the underlying order was still on appeal and had not yet been reversed.

There is considerable authority for the proposition that, with respect to civil contempt as opposed to criminal contempt, appellate reversal of the underlying order subsequent to a judgment of contempt for violation of that order also mandates reversal of the contempt judg-

[3] Although, based on this reasoning, we rejected the defendants' challenge to the judgment of contempt, we nonetheless reversed that judgment because it had been rendered without a proper evidentiary basis. *Cologne II*, 197 Conn. 149–57. Furthermore, because the defendants had continued to comply with the trial court's injunction from April 23, 1983, until that injunction had been vacated by this court in *Cologne I*, supra, 192 Conn. 48, we deemed the purpose of the civil contempt to have been satisfied, and therefore perceived no need for further trial court proceedings. *Cologne II*, supra, 157.

ment. See, e.g., *United States* v. *United Mine Workers,* 330 U.S. 258, 294–95, 67 S. Ct. 677, 91 L. Ed. 884 (1947) ("It does not follow . . . simply because a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order. The right to remedial relief falls with an injunction which events prove was erroneously issued."); see also *Maness* v. *Meyers,* 419 U.S. 449, 458, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975) ("[p]ersons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect"); *Salvage Process Corp.* v. *Acme Tank Cleaning Process Corp.,* 86 F.2d 727 (2d Cir. 1936).

Our decision in *Cologne II,* supra, 197 Conn. 141, however, has foreclosed drawing a distinction between the effect of an appellate reversal on a judgment of civil contempt and a judgment of criminal contempt if, as in *Cologne II,* the contempt judgment preceded the appellate reversal of the underlying order. We need not decide in this case whether the reasoning of *Cologne II* would apply in every case in which the judgment of contempt followed the appellate reversal. The special considerations that attend an order of child support are sufficient to persuade us, however, as they did the Appellate Court, that the same reasoning should apply to this case.

Our cases have recognized that the special concerns that arise in the context of family cases may sometimes justify a departure from the rules that ordinarily apply to other civil disputes. See, e.g., *Billington* v. *Billington,* 220 Conn. 212, 595 A.2d 1377 (1991) (party seeking to open marital judgment on basis of fraud need not establish diligence in attempting to discover fraud); *Monroe* v. *Monroe,* 177 Conn. 173, 182–83, 413 A.2d

819, appeal dismissed, 444 U.S. 810, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979) ("Analogies drawn from commercial litigation fail to respond adequately to the situation of emotional trauma commonly associated with the irretrievable breakdown of a marriage. . . . [L]awyers who represent clients in matrimonial dissolutions have a special responsibility for full and fair disclosure, for a searching dialogue, about all of the facts that materially affect the client's rights and interests."); see also *Baker* v. *Baker,* 187 Conn. 315, 445 A.2d 912 (1982); *O'Bymachow* v. *O'Bymachow,* 12 Conn. App. 113, 118–19, 529 A.2d 747, cert. denied, 205 Conn. 808, 532 A.2d 76 (1987); *Grayson* v. *Grayson,* 4 Conn. App. 275, 494 A.2d 576 (1985), appeal dismissed, 202 Conn. 221, 520 A.2d 225 (1987). Similar justifications are present in this case.

As the Appellate Court recognized in upholding the trial court's authority to hold the defendant in civil contempt, "a result different from that reached by us today would . . . frustrate clearly defined public policy regarding the parental obligation to support minor children. Both state and national policy has been, and continues to be, to ensure that all parents support their children and that children who do not live with their parents benefit from adequate and enforceable orders of child support. *Turner* v. *Turner,* 219 Conn. 703, 713–20, 595 A.2d 297 (1991); 42 U.S.C. § 651 et seq. (Part D of Title IV of the Social Security Act). Child support is now widely recognized as an essential component of an effective and comprehensive family income security strategy. See generally A. Houseman, 'Poverty Law Developments and Options for the 1990s,' 24 Clearinghouse Review 2, 5–7 (1990); P. Roberts, 'Child Support and Beyond: Mapping a Future for America's Low-Income Children,' 22 Clearinghouse Review 594 (1988). As with any income source, the effectiveness of child support in meeting the needs of

children is, of necessity, increased when payments are made regularly and without interruption." *Mulholland II,* supra, 31 Conn. App. 224.

As the Appellate Court aptly stated: "The failure of a marital relationship often has profound effects on the parties and their children and may, as well, affect society in general. Where the need for child support is established and ordered by the court, it is of the utmost importance for the welfare of the child that such payments be made in a timely fashion. It is also in the interest of society that the child be supported by those obligated to support the child and that the child not be required to seek public assistance to satisfy those needs unless otherwise necessary." Id., 218.

These strong public policies are reflected in Practice Book § 4046.[4] That section provides that an order of child support is not stayed by an appeal unless specifically ordered to be stayed pursuant to Practice Book § 4047.[5] Thus, the pendency of an appeal does not disturb the income stream necessary for support of a minor child, unless the court has stayed the effect of its order.

---

[4] Practice Book § 4046 provides in relevant part: "[AUTOMATIC STAY OF EXECUTION]——IN GENERAL

"In all actions, except where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment shall be automatically stayed until the time to take an appeal has expired; if an appeal is filed, such proceedings shall be stayed until the final determination of the cause; and, if the case goes to judgment on appeal, until ten days after the decision is announced . . . . *This section shall not apply to actions concerning . . . periodic alimony and support orders, as well as to custody or visitation orders in domestic relations matters* brought pursuant to chapter 17 . . . ." (Emphasis added.)

[5] Practice Book § 4047 provides in relevant part: "[STAY OF EXECUTION] ——APPLICATION IF STAY NOT AUTOMATIC

"In non-criminal matters in which the automatic stay provisions of Sec. 4046 are not applicable and in which there are no statutory stay provisions, application for a stay of the judgment or order of the superior court pending appeal shall be made to the judge who tried the case unless that judge is unavailable, in which case the application may be made to any judge of the superior court."

Furthermore, requiring a parent who has been ordered to pay child support to continue to make those payments pending an appeal, upon pain of civil contempt even if the parent ultimately prevails on the appeal,[6] serves another important function that is unique to family litigation. As our jurisprudence recognizes; see *Billington* v. *Billington,* supra, 220 Conn. 222; and as any judge and family practitioner will acknowledge, the area of marital dissolution litigation offers the opportunity for a degree of friction between the parties far greater than in many other areas of civil litigation. Therefore, a bright line rule requiring compliance with a child support order, regardless of the eventual outcome of an appeal of that order, will reduce the possibility of the increased friction that could arise from a real, or perceived, manipulation by an alleged contemnor of the timing of the hearing on a motion for contempt.

The defendant concedes that, if the Appellate Court's decision in *Mulholland I* had succeeded rather than preceded the trial court's contempt judgment in this case, that judgment would have been unassailable under *Cologne II.* Under the bright line test that we adopt in this case, both parties will know that the motion for contempt of court will be addressed on its merits, unaffected by the fortuity of the timing of the Appellate Court's decision on any pending appeal of the trial court's contempt judgment.

We are not persuaded by the defendant's reliance on such cases as *Reilly* v. *State,* 119 Conn. 217, 220–21, 175 A. 582 (1934), *Brennan* v. *Berlin Iron Bridge Co.,* 73 Conn. 412, 415–16, 47 A. 668 (1900), *Woodruff* v. *Bacon,* 35 Conn. 97, 102 (1868), and *Allen* v. *Adams,*

---

[6] We emphasize that we do not hold that, in a case such as this, the trial court is required to hold the alleged contemnor in contempt. That determination remains within the sound discretion of the court.

17 Conn. 67, 73 (1854). Although each of those cases does state, in varying forms, the general proposition that an appellate reversal of a judgment returns the parties to the status quo before the trial, none of them involved an intervening contempt judgment, and none of them involved an order of child support.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.