[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION de:1. THE PLAINTIFF'S MOTION FOR CONTEMPT (#145)2. AS AMENDED ON AUGUST 9, 1995 (#148)3. THE DEFENDANT'S MOTION FOR MODIFICATION (#146) DATED MAY 8, 1995: AND4. THE PLAINTIFF'S AMENDED MOTION FOR CONTEMPTDATED SEPTEMBER 8, 1995 (#154) (PERTAINING TO COLLEGE EXPENSES
In her amended motion for contempt dated August 9, 1995, plaintiff alleges that defendant has failed to: (1) pay the sum of $12,267.00 as was awarded by the Honorable John P. Ryan on January 30, 1995, which consists of past due alimony in the amount of $10,760.00 from August, 1994, through January, 1995, child support for January, 1995 of $1,400.00, and certain sheriff's fees ($39.89) and bounced check fees ($67.80) totaling $107.60; (2) pay the court ordered alimony for the months of February, 1995, through May, 1995, in the total sum of $7,840.00; (3) pay the court ordered support for the months of February, 1995, through May, 1995 in the total sum of $5,600.00; (4) pay the lump sum child support arrearage payment of $3,000.00 due February 1, 1995, pursuant to the order of the Honorable Stanley Novack dated March 7, 1994; (5) CT Page 1428-FFF pay certain medical bills for the parties' child totaling $582.60; and procure certain life insurance and annuity policies. Plaintiff's other amended motion dated September 8, 1995, seeks an order holding defendant in contempt for his failure to pay college education expenses in the amount of $8,890.39 for the parties' older daughter, Cori. The plaintiff alleges that pursuant to the parties' separation agreement which was incorporated into the final decree, the defendant was required to pay for his daughter's college education expenses, in full, until completion of college or to the age of 23, whichever occurs first. The defendant has not made any contribution to Cori's education. Plaintiff requests she be awarded reasonable attorney's and sheriff's fees incurred in these proceedings and further that defendant be incarcerated until he complies with the court's orders. In response to the allegations, the defendant contends that he is unable to pay his obligations.
The defendant's employment by UST, Inc. was terminated by an employer requested resignation effective May 26, 1994. On March 7, 1994, the defendant filed a financial affidavit bearing the same date (document (#134) on file) wherein he listed gross weekly income from employment of $1,698.08 and, after deducting taxes and medical insurance premiums totaling $394.76[1], a net disposable-income of $1,303.32 is revealed. In addition, the defendant listed an estimated bonus for 1994, payable February, 1995, of $55,000.00 which, after estimated taxes, he listed as $675.48 weekly. Together, his net disposable income totaled $1,978.00 weekly. On the same day the court accepted the parties' agreement to modify the child support order to provide that the defendant pay $900.00 monthly attributable to the younger daughter and $500.00 monthly attributable to the older daughter, a total of $1,400.00 monthly, (document (#129) Motion to Modify Order (#139). An arrearage had accrued on child support from August of 1993 when custody of the older child was transferred back to the mother. It was agreed that the arrears of $5,500.00 would be paid $2,500.00 in 30 days and $3,000.00 in February, 1995. The court approved of the deviation from the guidelines based on the transportation expenses involved with the defendant's visitation.[2]
By way of background, the dissolution decree approved the parties' separation agreement (#106) which provides that the periodic alimony of $1,960.00 monthly expires on June 30, 1995, and that child support would thereafter be $840.00 monthly until Cori reaches 18 years of age, per Article II, Paragraphs 2.3 and 2.4. On August 8, 1991, physical custody of Cori was placed with the CT Page 1428-GGG defendant per Order (#124). On September 24, 1991, the court ordered child support to be paid by the defendant to the plaintiff of $700.00 monthly for the younger daughter. In 1991, the defendant's net disposable income exceeded $2,000.00 weekly, cf. financial affidavit dated July 22, 1991 (#122).
On January 31, 1995, the court found an arrearage of $12,267.60 consisting of:
 Child Support for January, 1995 $ 1,400.00 Alimony Balance due for 1994 8,800.00 January 1995 Alimony $ 1,960.00 Bank Fees $ 67.80 Sheriff's Fees $ 39.80 ---------- Total $12,267.60
The $3,000.00 lump sum payment due February, 1995, was not paid. The child support payments due for February, March, April, and May were not paid, totaling $5,600.00. The alimony due for the same four months was not paid, totaling $7,840.00. Therefore, as of May 8, 1995, when the defendant filed his motion for modification the arrears had grown to $28,707.60 without considering the plaintiff's other claims.
The defendant received a severance package from UST which continued his salary to the end of 1994. The defendant received gross pay of $110,381.17, and, after tax withholdings of
 Federal Income $ 5,766.00 State Income $ 4,207.00 Social Security $ 3,757.00 Medicare $ 1,435.00 ---------- $15,165.00
leaves a net disposable income of $95,000.00 (Plaintiff's Exhibit 7). In addition, he liquidated 500 shares of UST, Inc. stock through UST on August 4, 1994, for gross proceeds of $14,470.00 (Plaintiff's Exhibit #8). However, the grant or cost basis was $14,281.00. There were two additional options exercised in 1994. Schedule D indicates a total gain of $965.00 (Plaintiff's Exhibit #10). As a result of being under-withheld, the defendant owed a balance of $12.032.00 [$12,032.00] to the IRS, and the net disposable income for 1994 actually is $83,000.00. The CT Page 1428-HHH anticipated bonus the defendant listed on the March, 1994 financial affidavit never materialized.
The defendant began work as a sub-contractor for Saxony Wood Products in early 1995, earning $7,000.00 through June 30, 1995 (Plaintiff's Exhibit #4).
THE DEFENDANT'S MOTION TO MODIFY
The court finds that the defendant was forced to resign from his position at UST, Inc., in order to receive the severance package which carried him through the end of 1994. The court further finds that there is no evidence that the defendant evaded new employment after his resignation. The court further finds that the defendant's engaged in sub-contracting in an effort to generate cash flow. The court finds no basis to employ the "earnings capacity" rule in this case, Miller v. Miller, 181 Conn. 610.
The defendant has established that a substantial decrease in his earnings occurred prior to the filing of his motion, and the court is justified in reconsidering the alimony and support orders,§ 46b-86(a) G.G.S. However, the defendant's motion was served pursuant to Practice Book Sec. 120 et seq. Retroactivity can only be considered by the court if the motion is served upon the opposing party pursuant to Sec. 52-50 C.G.S., Shedrick v. Shedrick,32 Conn. App. 147, 151, and 152.
The alimony order expired on June 30, 1995. The child support order will be reviewed and determined pursuant to the Connecticut Child Support Guidelines, Favrow v. Vargas (II) 231 Conn. 1.
The defendant's motion to modify is granted. There is no evidence that the defendant caused his termination.
THE PLAINTIFF'S MOTION FOR CONTEMPT DATED JANUARY 13, 1995 (#140)
This motion was ruled upon by Judge Ryan's finding of arrears, as stated supra, of $12,267.00.
THE PLAINTIFF'S MOTION FOR CONTEMPT DATED APRIL 5, 1995 (#145)
The Plaintiff's motion alleges several issues. The court will summarize them.
The plaintiff alleges, and the defendant does not contest, the CT Page 1428-III allegation that between August 1, 1994, and December 31, 1994 the defendant paid $200.00 monthly on account of alimony and did not pay anything for January, 1995.
The plaintiff alleges, that prior to January 30, 1995, the defendant failed to pay medical expenses of $446.70. He was ordered to pay these bills pursuant to Judge Novack's order entered March 7, 1994 (file document (#139)).
The plaintiff alleges the defendant failed to provide proof the life insurance ordered in the judgment.
The plaintiff alleges the defendant failed to maintain two annuity policies intended to fund the children's college education.
The plaintiff alleges that the defendant has not paid any alimony or child support in 1995 nor did he pay the $3,000.00 due on February, 1995.
The plaintiff alleges that two additional medical bills are unpaid, totaling $582.60.
All of the foregoing allegations are alleged again in the plaintiff's motion for contempt dated August 9, 1995 (file document (#148)) and will be addressed in the latter motion.
THE PLAINTIFF'S AMENDED MOTION FOR CONTEMPT DATED AUGUST 9, 1995 (#148)
In addition to the allegations contained in the earlier motions, this motion added paragraphs 18 through 32 alleging fraudulent conveyances by defendant of a boat, a 1993 Jeep Cherokee auto, and his interest in the proceeds received upon the sale of a condominium unit jointly owned and sold by the defendant and his present wife.
THE PLAINTIFF'S MOTION FOR CONTEMPT DATED SEPTEMBER 6, 1995 (#151) ANDAMENDED MOTION FOR CONTEMPT DATED SEPTEMBER 8, 1995 (#154)
This motion and its amended version allege the defendant's failure to pay college expenses for the daughter, Cori, who began attending Murray State College in Oklahoma in August, 1995. Article III of the separation agreement in paragraph 3.1 sets out the terms of the obligation. This education provision is enforceable pursuant to Sec. 46b-66 C.G.S.. CT Page 1428-JJJ
The defendant's present wife, Joanne, has been cited in and is contesting the allegations of fraudulent conveyances. For clarity, she will be referred to as spouse.
1992 FRAUDULENT CONVEYANCES
Two fraudulent conveyances are alleged to have occurred in 1992. The first item of tangible personal property involved is a Chris Craft boat. The "Sea Fritz" was purchased by purchase agreement dated May 1, 1992 listing Frank S. Nastro as buyer for $14,900.00 with $1,500.00 deposit drawn on a joint account maintained by the defendant and his spouse (Plaintiff's Exhibits 17 and 18). It was registered in the spouse's name only (Plaintiff's Exhibits 18, 19, and 20). The boat has been maintained. By invoice dated May 31, 1995 the Norwalk Cove Marina, Inc. invoiced the defendant $3,182.12 for summer dockage 1995, acknowledging $1,500.00 paid (Plaintiff's Exhibit #21).
On December 19, 1992, the defendant and his spouse as buyers executed a retail installment contract for a new 1993 Jeep Cherokee, trading in a Subaru for $1,500.00 allowance, paying $10,135.44 in cash via a check drawn by the defendant on their joint bank account and financing $10,000.00 (Plaintiff's Exhibits 24, 25, 26, and 27).
At the time these two transactions occurred, the defendant was employed by UST, Inc.. The spouse also received $10,000.00 from her stepfather in 1993 and an additional $5,000.00 in 1994, funds she had been promised in 1992. The court concludes that she had sufficient funds to purchase, maintain, and dock the boat, including two engines costing $12,000.00.
The defendant's obligation on the car loan was incurred long before his employment was terminated. The spouse had also been employed by UST, Inc. where she has been granted stock options which she had exercised. She sold the shares in 1992, realizing over $42,000.00 (Defendant Joanne Nastro's Exhibit A) as shown on the joint tax return of the defendant and spouse. On the return is listed alimony paid of $23,520.00 leaving an adjusted gross income of $332,088.00 after this deduction.
The court has no evidence to support the plaintiff's claim that these two transactions were fraudulent conveyances, done with fraudulent intent or to evade creditors. CT Page 1428-KKK
1994 FRAUDULENT CONVEYANCE
On November 1, 1994, the defendant and spouse sold a condominium unit located in Ridgefield, Connecticut realizing $35,891.367 net proceeds (Plaintiff's Exhibit #11). The entire amount was deposited in a Florida bank in an account in the spouse's name only. The spouse then repaid $10,000.00 to her relative who had advanced the sum as a loan. On his financial affidavit dated May 8, 1995 (Plaintiff's Exhibit #12), the defendant fails to list any interest in this Florida account in the spouse's name (Plaintiff's Exhibit #23).
Although the defendant and spouse deny any fraudulent intent and claim that a relocation to Florida was discussed, the court is convinced the defendant and spouse transferred the proceeds to Florida intending to place them beyond reach. The defendant was then behind in his alimony payments. He received no consideration for transferring the proceeds. The plaintiff has clearly established that this transfer was fraudulent. It is set aside as to the plaintiff for the defendant's 50% share of $17,945.68.
The defendant, Joanne Nastro, shall repay $17,945.68 to the defendant who shall repay the plaintiff said amount in reduction of the January, 1995 arrears. Selling the boat will enable the spouse to satisfy this order.
DEFENDANT'S FAILURE TO PAY
The initial failure to pay alimony commenced on August, 1994. The defendant continued to pay the child support through the end of 1994. After the finding of arrears by the court in January, 1995, the defendant was paid $26,296.58 to close out his savings plan at UST, Inc. (Plaintiff's Exhibit #13) which was deposited in the joint account maintained by the defendant and spouse (Plaintiff's Exhibit #14). The defendant paid the balance of the 1994 federal and state income tax obligations from this sum in the amounts of $12,032.00 and $1,492.00 respectively. The court finds no contempt as to these payments. Since the court must deal with net disposable income after taxes, payment of taxes either via withholding, estimated payments, or with the return cannot be said to constitute "prioritizing" obligations. The court has reviewedTurgeon v. Turgeon, 190 Conn. 269, since the plaintiff cited the case. CT Page 1428-LLL
The defendant in Turgeon received a lump sum from a transfer of real property but, instead of paying an arrears elected to "pay off" an obligation which he owed to the Internal Revenue Service,Id., p. 284. The opinion does not reveal the nature of the IRS debt. The defendant was the sole owner of a corporation. This court distinguishes Turgeon on its facts since in the present case it concerns net disposable income.
The court has also reviewed Mulholland v. Mulholland, 229 Conn. 643, also cited by the plaintiff.
In Mulholland, the defendant, an attorney in private practice, had received a $130,000.00 fee from which he paid $60,000.00 in past and current taxes and $11,000.00 on his remarriage. He still had $59,000.00 available to meet his child support. His contempt was based on an arrears of $6,175.00 which he paid the next day. There is no conclusion drawn in the opinion that payment of his taxes prevented the defendant from meeting his child support obligations. The defendant attacked the order which was revised a month after the finding of contempt. That was the issue in the case, not the payment of taxes.
However, the defendant failed to make any payment on account from the remaining proceeds and this court concludes that the defendant wilfully withheld child support. The defendant's decision to pay the 1995 invoice for dockage instead of child support is clearly a contempt. The defendant is ordered to pay $3,182.12 to the plaintiff by the end of this month.
As to the plaintiff's many remaining claims, the court finds that the plaintiff failed to bring the issue of the college education of the older daughter to the court for a determination as required by Article III paragraph 3.1 and, therefore, no contempt is found as to that issue. The plaintiff failed to forward medical bills to the defendant. Lack of notice or request for payment cannot constitute contempt as to those bills which surfaced after January, 1995. The court finds insufficient evidence to rule on the annuity policies issue. During the course of the hearing the defendant applied for life insurance.
The plaintiff's Amended Motion for Contempt dated September 8, 1995 (#154) is denied.
FINDING OF CONTEMPT
CT Page 1428-MMM
The defendant has been found in contempt as discussed above. The Amended Contempt Motion dated August 9, 1995 is granted.
ORDERS
The defendant is ordered to pay weekly child support for the minor child, Kimberly, in the amount of $25.00 and $5.00 on the arrears determined to be:
 Arrears as of January 30, 1995 $12,267.00 Child Support for 1995 $16,800.00 January 1996 Child Support $ 1,400.00 Alimony February-June, 1995 $ 9,800.00 Lump sum due February, 1995 $ 3,000.00 ---------- Total arrears as of January 31, 1996 — $43,267.00
The first payment on the new child support order shall be due and payable on February 7, 1996. The defendant is found to be a low income obligor based on his most recent financial affidavit.
The defendant, Joanne Nastro, is allowed 60 days to raise the money ordered returned to the defendant.
No attorney fees are awarded at this time without prejudice to review at the April hearing.
No incarceration of defendant is ordered at this time since the purpose of civil contempt is coercive and conditional and not to punish.
The court orders the defendant and spouse to appear in court on April 16, 1996 to demonstrate compliance with these orders.
HARRIGAN, JUDGE