[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, David L. Washburn, and the defendant, Joan O'Reilly fka Joan I. Washburn, were divorced on January 5, 1987. At the time of the dissolution, the parties had two minor children, Laurie Rebecca Washburn, born May 6, 1978 and Allison Lynn Washburn, born May 20, 1980. Laurie Rebecca Washburn has reached the age of majority and Allison will reach age 18 on May 20, 1998. The dissolution judgment of January 5, 1987, provided that the plaintiff would pay child support in the amount of $1000 per month to the defendant for the benefit of the two minor children. Upon emancipation of the older child, child support was reduced to $750 per month or the pursuant to the terms of the judgment. Plaintiff has paid all monthly support payments through May 1997 and has failed to pay support payments since June of 1997.
According to the terms of the judgment, the plaintiff is to pay fifty percent of the cost of college tuition, room and board for each child not to exceed one-half the cost of tuition, room and board costs then in effect at the University of Connecticut at Storrs. The oldest child, Laurie, is presently attending Syracuse University. The share due from the plaintiff for college costs is $5350 for the year. The plaintiff paid $2675 to Syracuse University on October 23, 1997.
On September 2, 1995, the plaintiff suffered a stroke. CT Page 2220 On April 18, 1996, the plaintiff suffered a second stroke. As a result of the strokes, the plaintiff left his employment with the Hartford Insurance Group on April 18, 1996. The plaintiff has been receiving long term disability through a private insurance policy since April 18, 1996 and applied for Social Security Disability which was awarded to him on June 8, 1997. Additionally, on June 23, 1997, the plaintiffs minor child, Allison, was awarded $701 per month payable through the defendant as representative payee. Payments are made in arrears with each payment made approximately on the fourth Wednesday of the following month. Payments will continue until the minor child reaches the age of 18 or graduates from high school but not beyond age 19. Monthly payments may be increased or decreased and will be paid through June 1998 when Allison graduates from high school.
The Social Security Administration also awarded the parties' minor child a lump sum payment of $8909 as retroactive benefits for the period of May 1996 through May 1997. The lump sum payment amounted to $673 per month for the months of May 1996 through November 1996, $693 for the month of December 1996 and $701 per month for the months of January 1997 through May 1997. The lump sum payment of $8909 was paid by direct deposit to the bank account of the minor child and the defendant, as custodian of the minor child, is the representative payee with respect to this amount. The full amount of the lump sum payment, $8909, is currently being held in an account.
Under the provisions of the plaintiff's long term disability insurance policy, the benefits paid to the plaintiff equal 70% of the salary earned by the plaintiff before his disability, less the amount paid pursuant to the United States Social Security Act to which he, his spouse and children may be entitled. Social Security Benefits to which the plaintiff and, the minor child may be entitled are included in the definition of "other income benefits" set forth in the plaintiff's private disability policy. Under "calculation of monthly benefits" the plaintiff's private disability policy provides as follows:
 To determine the Monthly Benefit The Plan will pay each month while you are Disabled: CT Page 2221
 (1) Multiply your Monthly Income by the Benefit Percentage;
(2) Take the lesser of:
(a) the resulting product; or
(b) the Maximum Monthly Benefit;
 (3) Carry forward the amount in item (2) above and from it subtract:
 (a) all Other Income Benefits, including those for which you could collect but did not apply;
 (b) 80% of income from Rehabilitative Employment; and
 (c) all other income from any employer or for any work.
The plaintiff's former employer has reduced the plaintiffs gross entitlement of 70% by (1) the direct payment of Social Security to the plaintiff and (2) the $701 per month currently being paid on behalf of the minor child. The Hartford Insurance Group has demanded and been repaid all sums the plaintiff received from Social Security. The Hartford Insurance Group has also demanded reimbursement the $8,909 lump sum payment paid to the minor child and has notified the plaintiff that it will offset the lump sum payment from future benefits due the plaintiff from his long term disability benefits unless and until the lump sum amount is paid to the Hartford.
Presently before the court is the plaintiff's motion for modification and clarification and the defendant's motion for contempt. On October 1, 1997, this court ordered the parties to submit briefs and a stipulation of facts.
The plaintiff presents three issues. The first issue is whether a non-custodial parent is entitled to a credit for monthly payments made for the benefit of the minor child CT Page 2222 by the Social Security Administration to the custodial parent as representative payee. The second issue is whether the plaintiff is entitled to reimbursement or a credit to him now or in the future, or some combination of both for the lump sum payment paid by the Social Security Administration which lump sum payment is the accumulation of monthly benefits paid for a specific period of time during which the plaintiff had paid his full child support. The third issue presented is whether the plaintiff is in contempt of the existing order of the court.
In support of the position that the plaintiff is entitled to a credit for payments made by the Social Security Administration, the plaintiff relies on the case of Jenkins v. Jenkins, Superior Court, judicial district of Tolland at Rockville, Docket No. 45884 (January 24, 1997) (Rittenband, J.) (18 Conn. L. RPTR. 666). This case, as duly noted by counsel, was on appeal to the Supreme Court at the time the parties submitted their briefs on the issues to this court. Subsequent to the submission of the parties' memoranda, the Supreme Court decided Jenkins. The Supreme Court reversed and remanded the case for recalculation of the disabled parent's child support obligation. Jenkins v.Jenkins, 243 Conn. 584, 595 (1998).
In Jenkins v. Jenkins, supra, the question of whether a noncustodial parent is entitled to a credit for social security payment made to the custodian of a minor child was not in issue. In fact, the court stated the issue as follows: "The sole issue to be decided in this appeal is whether dependency benefits received pursuant to the Social Security Act by the minor children of the disabled plaintiff, Jerry L. Jenkins, that are credited toward the amount of the plaintiff's child support obligation should also be included in his gross income when determining that obligation under the Child Support and Arrearage Guidelines (guidelines)." (Footnotes omitted.) Jenkins v. Jenkins, supra, 243 Conn. 585-86. Thus, the issue of whether there should be a credit was implicit in the decision.
Additionally, the Supreme Court stated that "[i]f the commission were amending the guidelines in order to make clear that (1) a credit should be given for dependencybenefits, and (2) social security benefits are an element of gross income, with the exception of supplemental security CT Page 2223 income, it would have explicitly excluded dependency benefits along with supplemental security income from the board definition of gross income that already existed if such a result had been intended." (Emphasis added.)Jenkins v. Jenkins, supra, 243 Conn. 591-92. Here, the court recognized that the Guidelines were amended in 1994 to allow a credit for dependency benefits. The court held that "social security dependency benefits paid to the minor children of the [disabled parent] and credited against his child support obligation must be included in [disabled parent's] gross income for purposes of determining the amount of his child support obligation under the guidelines." (Emphasis added.) Id., 595. The court stated that "social security benefits are appropriately characterized as `earnings of the contributing parent . . . .'Miller v. Miller, 890 P.2d 574, 577 (Alaska 1995). These payments are for the purpose of replacing income lost because of the employee's inability to work upon becoming disabled. Horton v. Horton, 219 Ga. 177, 178,132 S.E.2d 200 (1963). The benefits are not gratuities but are earned, and they substitute for lost earning power because of the disability. (Internal quotation marks omitted.) Pontbriandv. Pontbriand, 622 A.2d 482, 485 (R.I. 1993)." Jenkins v.Jenkins, supra, 243 Conn. 592.
"The characterization of dependency benefits as a substitute for the disabled party's loss income has been identified as the basis for allowing a credit to the noncustodial parent toward his or her child support obligation. The majority view . . . regards social security benefits [paid to dependent children] as earnings of the contributing parent and, for this reason, allows benefits paid to a child on the parent's behalf to be credited toward child support obligations. Miller v. Miller, supra,
890 P.2d 577. The same reasoning has also provided the basis for the decision to include the benefits in the gross income of the noncustodial parent. In deciding that the . . . benefits . . . should be credited as child support payments by [the noncustodial parent], we reasoned that those benefits are essentially earnings derived by [the noncustodial parent] from his past social security contributions. By parallel reasoning, the benefits should be counted as income to [him]. Id., 578." Jenkins v.Jenkins, supra, 243 Conn. 592-93. CT Page 2224
"Moreover, the [noncustodial parent] enjoys the benefit of the credit against his child support obligation, and the credit enables the [noncustodial parent] to retain more of his other income for himself. Such a release from an obligation or discharge from indebtedness is logically characterized as income. The benefits . . . of set [the noncustodial parent's] incapacity to provide for his children through continued employment. [The noncustodial parent] enjoys a credit against his support obligation for the amount of those benefits. Thus, those benefits are, in effect, income to him and fall within the definition of his income under [the guidelines]. Whitaker v. Colbert, 18 Va. App. 202,206, 442 S.E.2d 429 (1994)." Jenkins v. Jenkins,supra, 243 Conn. 593.
In keeping with Jenkins v. Jenkins, supra, the court finds that the plaintiff is entitled to a credit for dependency benefits paid to the minor child. In the memorandum submitted by the plaintiff in support of his motion for modification and clarification he states that the is not seeking a modification, only a clarification. The stipulation of facts, however, includes the following paragraph: "The parties stipulate to the Child Support Guidelines worksheet attached hereto as Exhibit `C'. The worksheet is not complete as it does not include or exclude any Social Security adjustment to the plaintiff (father) for the payment received by the minor child . . . of $701.00 per month or $161.77 per week." Thus, the court finds that the plaintiff is seeking a modification and not just clarification[1] but recognizes that the modification can not be retroactive. See General Statutes § 46b-86a; Hill v.Hill, 39 Conn. App. 258, 265, 664 A.2d 812 (1995) ("retroactive modification of a support order is prohibited"); Sanchione v. Sanchione, 173 Conn. 397, 406,378 A.2d 522 (1977).
The guidelines worksheet stipulated to by the parties does not include the sum of $161.77 per week paid to the minor child in the father's gross weekly income. Recomputing the figures to include $161.77 in the plaintiff's gross income, the plaintiff's net weekly income is $1119.34.[2] Under the guidelines, the amount of support based on the combined net weekly income of the parties ($1760.98) results in a combined child support obligation of $327 per week. The defendant mother's share of this CT Page 2225 obligation is 36% and the plaintiff father's share is 64%. Thus the plaintiff father's share of the weekly obligation is $209.28 less weekly dependency benefits of $161.77 for a total of $47.51 per week. Pursuant to General Statutes §46b-86(a),[3] the modified amount is effective from the date the defendant was served with the motion for modification and clarification which was August 5, 1997.
The plaintiff is entitled to a credit for child support payments made through social security dependency benefits as follows: For the months of June 1997 and July 1997, the plaintiff's support obligation was $750 per month for a total of $1500. According to the stipulation of facts, the minor child received $701 for the months of June and July. Crediting the plaintiff in the amount of dependency benefits paid by Social Security for the months of June and July, there is an arrearage of $98. The minor child received a lump sum payment in the amount of $8909 on June 20, 1997. This lump sum payment was for the months of May, 1996 through May, 1997 during which time the plaintiff paid the full amount of his support obligation. Thus, the plaintiff is entitled to a credit for the arrearage in the amount of $98.
In keeping with the modified child support obligation, the plaintiff's child support obligation is $209.28 per week or $906.88 per month. The plaintiff is in arrears at this modified rate for the months August 1997 through February 1998 or a total of seven months. Thus, the arrearage totals $6348.16 less the total monthly amount paid by social security during this time ($4907) leaving an arrearage of $1441.16. The arrearage to date equals $1539.16 ($1441.16 plus $98). Because the lump sum payment of $8909 is in excess of the arrearage, the plaintiff is entitled to a credit of $1539.16 toward the total arrearage, leaving a surplus of $7369.84 ($8909 minus $1539.16).
In summary, in answer to the plaintiff's first issue presented, the plaintiff is entitled to a credit for monthly payments made for the benefit of the minor child by the Social Security Administration. The question remains, however, as to whether the plaintiff is entitled to reimbursement or a credit to him now or in the future, or some combination of both for the lump sum payment paid by the Social Security Administration which lump sum payment is CT Page 2226 the accumulation of monthly benefits paid for a specific period of time during which the plaintiff had paid his full child support.
In Weaks v. Weaks, 821 S.W.2d 503, 507 (Mo. banc 1991), the Missouri Supreme Court was faced with the following issue: "Are excess social security benefits available to satisfy any future support obligation or any arrearage accumulated prior to the disability?" The court held that "[t]he answer must be no. Any excess is deemed a gratuity to the extent that it exceeds the amount of support mandated by the decree. Andler v. Andler, 217 Kan. 538, 538 P.2d [649, 654 (1975)]; see also Bowden v. Bowden, 426 So.2d 448
(Ala.Civ.App. 1983); Potts v. Potts, 240 N.W.2d [680, 681 (Iowa 1976)]." Weaks, supra, 507. See also In Re Marriageof Cowan, 928 P.2d 214, 221 (Mont. 1996) (same, citing Weaks
as authority). The court is in agreement with these cases and finds that the excess of the lump sum payment is a gratuity.
The plaintiff argues that this result is inequitable because he is basically paying twice, first through his payment to Allison and second in repayment to his employer of the sums paid by social security directly to the defendant on behalf of Allison. As a result, the plaintiff seeks a credit for the remaining excess payment at some point in the future. This court will look forward from today to determine what the future holds for Allison or her parents. The plaintiff is seeking to have the balance of the lump sum payment serve as a credit toward his obligation for college tuition pursuant to the separation agreement until such balance is exhausted. The plaintiff then asserts that "[if the balance] is not exhausted, because Allison chooses not to attend college, the parties may always come back to court or perhaps even amicably settle the matter." The court lacks information upon which to determine what the cost of tuition, room and board at the University of Connecticut at Storrs will be in the future. Additionally, the court can not determine whether Allison will even attend college. Thus, the plaintiff is not entitled to reimbursement or a credit to him now or in the future, or some combination of both for the lump sum payment paid by the Social Security Administration which lump sum payment is the accumulation of monthly benefits paid for a specific period of time during which the plaintiff had paid his full CT Page 2227 child support.
For the foregoing reasons, the motion for modification/clarification is granted in part.
The defendant's motion for contempt is denied. "Contempt proceedings are a proper means of enforcing a court order of child support." Mulholland v. Mulholland,31 Conn. App. 214, 220, 624 A.2d 379, cert. granted,227 Conn. 905, 632 A.2d 693 (1993), aff'd, 229 Conn. 643, 643 A.2d 246
(1994). "In order to hold one in contempt for violation of [such] a court order, [however], it must be shown that the alleged contemnor wilfully disobeyed the order." Schwab v.Schwab, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 008990 (December 29, 1993) (Jones, J.) aff'd, 37 Conn. App. 929, 657 A.2d 726 (1995); see alsoTurgeon v. Turgeon, 190 Conn. 269, 282, 460 A.2d 1260
(1983); Connolly v. Connolly, 191 Conn. 468, 483,464 A.2d 837 (1983).
"[A] wilful failure to comply with an outstanding court order may constitute a civil contempt." Marcil v. Marcil,4 Conn. App. 403, 405, 494 A.2d 620 (1985). However, "[a] finding of contempt depends upon the facts and circumstances surrounding it." Id., quoting Dukes v. Durante,192 Conn. 207, 228, 471 A.2d 1368 (1984). "These facts and circumstances may include an inability to obey an order of the court," Schwab v. Schwab, supra; because "`[t]he inability of . . . [a] defendant to obey an order of the court, without fault on his part, is a good defense to a charge of contempt.'" Turgeon v. Turgeon, supra,190 Conn. 283, quoting Tobey v. Tobey, 165 Conn. 742, 746, 345 A.2d 21
(1974). "The burden of proving such inability lies with the delinquent party." Leslie v. Leslie, 174 Conn. 399, 403,389 A.2d 747 (1978), citing 17 Am.Jur.2d, Contempt, § 51.
The plaintiff did not wilfully disobey an order of the court. In fact, he paid child support throughout the period of disability until such time as the Social Security Administration began making payments to the child's representative payee. At that point, the plaintiff sought modification and clarification of the 1987 divorce judgment. The plaintiff is not in contempt to court. CT Page 2228
Taking into consideration the financial ability or the parties as well as the statutory criteria set out in General Statutes §§ 46b-62 and 46b-82, the court denies both the plaintiff's and defendant's requests for attorneys fees. Both parties possess ample funds to pay their respective attorneys fees.
BISHOP, J.
EXHIBIT A
 CONNECTICUT CHILD SUPPORT AND ARREARAGE GUIDELINES WORKSHEET A — Page 1
Joan O'Reilly Joan O'Reilly f/k/a Washburn David Washburn f/k/a Washburn — ------------ -------------- ----------------- MOTHER FATHER NAME OF CUSTODIAN
COURT Hartford D.N./CASE NO. FA86-0315735 NUMBER OF CHILDREN 1
CHILD'S NAME DATE OF BIRTH CHILD'S NAME DATE OF BIRTH — ---------- ------------- ------------ ------------- Allison 5/20/78 CT Page 2229
I. Net Income Computation (Weekly amounts) MOTHER FATHER
1. Gross income (attach verification) $ 840.30 $ 1,412.86 2. Number of exemptions for tax purposes $ -------- $ -------- 3. Federal income tax $ 122.32 $ 186.52 4. State and local income tax $ 14.96 $ 44.23 5. Social security tax or mandatory retirement $ 49.70 $ 6. Health insurance premiums (other than child) $ 11.68 $ 62.76 7. Union dues or fees $ -------- $ -------- 8. Unreimbursed work-related day care $ -------- $ -------- 9. Other alimony and child support orders $ -------- $ -------- 10. Sum of lines 3 — 9 $ 198.66 $ 293.52 11. Net income (line 1 minus line 10) $ 641.54 $ 1,119.34
II. Current Support Determination
12. Combined net weekly income (nearest $10.00) $ 1,760.98 13. Basic obligation (from schedule) $ 327.00 14. Check here if noncustodial parent is a low-income obligor (see instructions) ------------------------ 15. Child's health insurance premium $ -------- $ -------- 16. Total obligation. (Line 13 minus noncustodial parent's line 15 amount if line 14 is checked; line 13 plus line 15 total for all other cases) $ 327.00 17. Each parent's decimal share of line 12 (If line 14 is checked, skip this line and line 19, and enter the line 16 amount in the noncustodial parent's column on line 18.) 36% 64% 18. Each parent's share of the total obligation (Line 17 times line 16 for each parent) $ 117.72 $ 209.28 19. Health insurance premium adjustment $ -------- $ -------- 20. Social security benefits adjustment $ -------- $ 161.77 21. Sum of lines 19 and 20 (for each parent) $ 0 $ 161.77 22. Recommended support amounts (Line 18 minus line 21) $ 117.72 $ 47.51 23. Current support order (Noncustodial parent(s) only. If different from line 22 amount, explain in section VI.) $ -------- $ --------
 CONNECTICUT CHILD SUPPORT AND ARREARAGE GUIDELINES WORKSHEET A — Page 2
CT Page 2230
 III. Total Arrearage Determination
24, Delinquencies on current support orders $ --------- 25. Unpaid court-ordered arrearages $ --------- 26, Past-due support (not court-ordered) $ --------- 27. Total arrearage (sum of lines 24 through 26) $ ---------
IV. Arrearage Payment Determination
28, Current support order from line 23 (or imputed support obligation for IV-D arrearages owed to the state or if child living with obligor) $ --------- 29. Twenty percent 20% of line 28 (or fifty percent (50%) of line 28 if there is no child under age 18) 30. Noncustodial parent's line 11 amount $ --------- 31, Fifty-five percent (55%) of line 30 $ --------- 32. Line 31 minus line 28 $ --------- 33. Line 28 plus $145 $ --------- 34. Line 30 minus line 33 $ --------- 35. Recommended arrearage payment $ ---------
(Smallest of lines 29, 32, and 34; or $5.00/month if child living with obligor and obligor's gross income is not more than 250% of poverty level; or the lesser of $5.00/week or line 34 for low-income obligor. If arrearages are owed to the state and the family, $5.00/month, of this amount is allocated to the state, and the balance to the family.)
36, Arrearage payment order (At, least $5.00/month unless line 34 is less than $1.00. If different from line 35, explain in Section VI,) $ ---------
V. Order Summary
37. Current support order $ --------- 38, Arrearage payment order $ --------- $ --------- 39. Total arrearage $ --------- $ --------- to state to family 40. Total weekly support order (Line 37 plus line 38 total) $ ---------
VI. Deviation Criteria Applied
CT Page 2231
41. Reasons for deviation from current support and/or arrearage guidelines: __________________________________________________________________________
__________________________________________________________________________
__________________________________________________________________________
__________________________________________________________________________
_______________________ _____________________ __________________ Prepared by Title Date